[Crim. No. 2270.   First Dist., Div. One.   Nov. 17, 1943.]

THE PEOPLE, Respondent, v. LAWRENCE ZERVAS et al., Appellants.

Walter H. Duane for Appellant.

Robert W. Kenny, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

PETERS, P. J.—Lawrence Zervas, Joseph Rosales and Theodore Evilsisor were charged, by information, with a violation of section 503 of the Vehicle Code. That section provides in part that: ''Any person who drives or takes a vehicle not his own, without the consent of the owner thereof and in the absence of the owner, and with intent to either permanently or temporarily deprive the owner thereof of his title to or possession of such vehicle, whether with or without intent to steal the same, or any person who is a party or accessory to or an accomplice in any such driving or unauthorized taking or stealing is guilty of a felony . . .'' Zervas was also charged with a prior grand theft conviction, and Rosales was charged with two prior robbery convictions. Evilsisor pleaded guilty to the offense charged. Zervas and Rosales were tried by the court without a jury and found guilty. From the judgment of conviction, and from the order denying their motion for a new trial, Zervas and Rosales appeal.

The prosecution called but two witnesses. The first of these was Bert Rosenberg, owner of the car in question. He testified that at about 4:00 p. m. on March 17, 1943, he left his car in a parking lot on Ellis Street in San Francisco; that he left the ignition keys in the car; that when he returned to the lot at 10:00 p. m. the car was gone; that he had given no one his consent to take the car; that the police returned the car to him at about 4:20 a. m., March 18, 1943; that the car had not been damaged in any way.

The second witness was William Osterloh, the arresting officer. He testified that he was on duty in a radio car during the early morning of March 18, 1943; that he observed the car at about 3:50 a. m. and discovered it was a car that had been reported stolen; that Evilsisor was driving and Zervas and Rosales were riding in the back seat; that he and officer Hallman followed the car two blocks when it stalled; that he and his associate arrested the three occupants; that when he took the three men to the police station he questioned them as to their past records, but had no conversation with them about the possession of the car. The prosecution rested on this evidence.

Zervas testified that he lives in Marin City and works for Marinship; that he knew Rosales and Evilsisor; that on March 17, 1943, he came to San Francisco with Rosales; that they arrived at 7th and Mission Streets at about 10:00 p. m.; that they visited two penny arcades and a bowling alley; that they

were intending to catch the 12:15 bus home; that while walking towards the bus depot he heard a horn from an automobile; that it was Evilsisor driving the car in question; that Evilsisor asked them where they were going, and, upon being informed, stated that he would drive them to the depot; that Evilsisor drove them to the depot; that it was then discovered that the bus would not leave for half an hour; that Evilsisor suggested that they take a ride; that they took a ride and the car stalled several times; that, as a result, they missed their bus; that thereafter they continued to ride around; that he asked Evilsisor where he got the car; that Evilsisor told him he had borrowed it; that he was not with Evilsisor when the latter got the car; that he thinks Evilsisor was working in a parking lot at this time. On cross-examination he admitted the prior felony conviction and testified that he first met Evilsisor in San Quentin; that since leaving San Quentin he had met Evilsisor but once before the night in question; that after they missed the bus they continued to ride around; that the car stalled frequently; that he did not think another bus went to Sausalito until 6:15 a. m.

Joseph Rosales testified that he was a plumber; that he lives in Mill Valley and works in San Rafael; that on the night in question he met Zervas in Mill Valley at the bus depot and that they came over on the bus together; that they wanted to bowl; that they visited two penny arcades and then went to a bowling alley, but it was too crowded and they could not get an alley; that upon leaving the bowling alley Evilsisor tooted at them and offered to drive them to the bus depot; that they were early and took a ride; that they missed the 12:15 bus and decided to ride around; that the car stalled several times. On cross-examination he admitted two prior felony convictions, and testified that Zervas asked Evilsisor where he got the car; that Evilsisor replied that he had borrowed it.

After these two defendants had testified, the court, with consent of counsel, called Evilsisor to the stand. He admitted two prior felony convictions and testified that he was working in a parking lot on the date in question; that he met Zervas and Rosales in prison; that he did not know the two men very well; that he had seen Zervas and Rosales only once or twice since leaving prison; that he took the car intending to ride around; that he took the car around 9:30 p. m.

No further evidence was introduced. ▆▆▆ The main contention of appellants is that the evidence is totally insufficient to

384

sustain their conviction. With this contention we agree. The prosecution proved that the car was taken without the consent of the owner; that the two appellants were riding in the car with a driver who admits that he stole the car; and that the three men had been acquainted in San Quentin. No direct or circumstantial evidence sufficient to support a finding of felonious intent was introduced at all.█ While it is generally true that the question of felonious intent is for the trier of the fact, and may be inferred from all the circumstances (*People v. Deininger*, 36 Cal.App.2d 649 [98 P.2d 526]; *People* v. *Perkins*, 8 Cal.2d 502 [66 P.2d 631]; *People* v. *Gilbert*, 26 Cal.App.2d 1 [78 P.2d 770]), there must be some reasonable basis in the evidence, for the inference. █ In prosecutions under section 503 of the Vehicle Code, while it is not incumbent upon the prosecution to prove an intent to steal the car, it is necessary to prove an intent to deprive the owner of the possession of the car. (*People* v. *Score*, 48 Cal.App.2d 495 [120 P.2d 62].) But that intent must be proved as a fact. The rule is thus stated in *People* v. *Neal*, 40 Cal.App.2d 115 at page 117 [104 P.2d 555] : ''Under section 503 the crime is committed when the taking or driving of the vehicle is accompanied by a lack of consent from the owner and an intent to either permanently or temporarily deprive such owner of his title to or possession of such vehicle. The intent is made an affirmative element of the crime and consequently must be proved as a fact. The proof of intent as a fact was incumbent upon the prosecution and the taking and abandoning of the car by appellant did not necessarily furnish sufficient evidence from which the presence of a specific intent may have been inferred by the jury. Section 503 is distinguished from section 499b of the Penal Code in that specific intent is not an element in the violation of this latter statute. Section 499b is the so-called 'Joyride' statute. There is a violation within the meaning of the provisions of this section when an individual without the permission of the owner takes any aircraft, motor vehicle, bicycle, etc., for the purpose of temporarily using or operating the same. The violation of section 499b is made a misdemeanor. The necessity of furnishing sufficient evidence of the specific intent required to constitute a violation of section 503 is readily apparent.''

█ There was no evidence at all from which it could be inferred that Zervas and Rosales participated in the unlawful act or aided or abetted Evilsisor in the perpetration of the

unlawful act. (*People* v. *Terman*, 4 Cal.App.2d 345 [40 P.2d 915].) Certainly it cannot be reasonably inferred that because Zervas and Rosales were riding as passengers in a stolen car that they knew it was stolen and intended to deprive the owner unlawfully of his right to the possession of the car. Just as the mere possession of stolen property, unexplained by the defendant, is not sufficient to sustain a conviction of grand theft (*People* v. *Haack*, 86 Cal.App. 390 [260 P. 913]), so riding as a passenger in a stolen car, even if unexplained, will not alone justify a finding of the required felonious intent under section 503 of the Vehicle Code. A contrary rule would mean that every passenger riding in a stolen car would be prima facie guilty of a violation of section 503 of the Vehicle Code. That is not the law.

The two appellants attempted to explain their presence in the car. The trial court was, of course, not bound to believe their testimony. It is a story that could easily have been fabricated. Moreover, by reason of their prior convictions, appellants were impeached. (Sec. 2051, Code Civ. Proc.) The trial court, for these reasons, could have disbelieved their story in its entirety. But if this were so, the only evidence before the trial court was that of Rosenberg and Osterloh. As already pointed out, from that evidence it cannot reasonably be inferred that the appellants had the requisite felonious intent. If the trial court believed their testimony, no felonious intent was present. In either event, the evidence, as a matter of law, is insufficient to sustain the convictions.

The judgment and order appealed from are reversed.

Ward, J., and Dooling, J. pro tem., concurred.