[Crim. No. 1864.   Third Dist.   Mar. 30, 1944.]

THE PEOPLE, Respondent, v. EULICE H. GIBSON, Appellant.

Chas. H. Epperson for Appellant.

Robert W. Kenny, Attorney General, and T. G. Negrich, Deputy Attorney General, for Respondent.

THOMPSON, J.—The defendant was convicted under section 503 of the Vehicle Code of feloniously driving an automobile without the consent of the owners, and with intent to deprive the owners of the temporary possession of the vehicle. The case was tried by the court sitting without a jury. The defendant did not take the witness stand in his own behalf. He was found to be guilty as charged, but in the discretion of the court he was fined the sum of $100 and, upon failure to pay the same, he was sentenced to imprisonment in the county jail one day for each three dollars of said fine. From that judgment this appeal was perfected.

The evidence is brief. It satisfactorily shows that for sev-

eral months prior to the commission of the alleged offense the defendant worked for Renney Motors, a co-partnership, at Stockton, cleaning and servicing machines. While there is some dispute regarding the technical title to the automobile in question, we are satisfied that machine, together with others, belonged to Renney Motors. On several occasions the defendant drove those cars on different missions at the request of his employers. On October 1, 1943, at about one o'clock p. m., at the request of Louis Raballo, the manager of the business, the defendant took the machine in question and drove Lieutenant Jack Renney to the Stockton airfield. The record is silent with respect to how much gasoline the tank contained, or whether the defendant was expected to immediately return to the place of business. Nor does the evidence indicate the location or distance of the airfield from the Renney Motors shop. The defendant failed to return that afternoon. At four o'clock the following morning the Stockton police patrol officers found the automobile stalled on the railroad track in the outskirts of Stockton. The gasoline was exhausted. The defendant sat at the steering wheel in an intoxicated condition. He was placed in jail. The machine was towed to a garage.

Not having learned of the recovery of the machine or the arrest of the defendant by the policemen, the owners of the automobile filed a charge against the defendant of violating the provisions of section 503 of the Vehicle Code. At the trial the manager of the company said that if they had known the facts they would not have charged him with that offense.

The chief issue on appeal is whether the record contains sufficient evidence of the alleged intent of the defendant to deprive the owners of possession of their car by merely showing that he became intoxicated and failed to return the machine within the time ordinarily required to make the trip to the airfield and back. He was charged with *driving* the automobile, without the consent of the owners *with intent to deprive them of the possession of the machine*. There is no evidence that he drove the machine beyond the regular course to and from the airfield. The defendant was evidently on his way back to the Renney Motors shop when the machine became stalled on the track in the outskirts of Stockton for lack of gas. The record fails to show whether the tank contained enough gasoline when he started to drive to the airfield and back.

■ The court did not err in receiving in evidence an extra judicial statement of the defendant without preliminary proof that it was voluntarily made. When that statement was offered in evidence, the defendant objected on the ground that it was incompetent and that the foundation for its reception had not been established. The objection was overruled. There is no evidence that it was voluntarily made. All that it contains was testified to by the stenographic reporter as follows:

"Q. You had no permission to take the car out to ride around? A. No; I just took Bob Renney's brother out there. Q. You were to come back? A. Yes, I have been there for about eight months now. This is the first time that anything like this has happened; it will never happen again."

It is true that if the foregoing statement may be deemed to constitute a confession of guilt of the crime charged it would have constituted error to receive the evidence in the absence of preliminary proof that it was made voluntarily without coercion or promise of leniency. (8 Cal.Jur. 109, § 201.) However, we consider the statement a mere admission of certain facts which does not amount to a confession. Therefore the statement was admissible in evidence without preliminary proof that it was voluntarily made. (*People* v. *West,* 34 Cal.App.2d 55, 61 [93 P.2d 153]; 8 Cal.Jur. 99, § 195.) The court did not err in receiving the statement without proof that it was voluntarily made.

■ We are of the opinion the evidence in this case does not affirmatively show that the defendant intended to deprive the owners of possession of their automobile. We may not be permitted to infer that merely because he unintentionally got drunk and delayed returning the car for some ten hours that he deliberately intended thereby to deprive the owners of the possession of the machine. ■ Under section 503 of the Vehicle Code it is essential for the prosecution to prove as a necessary element of the offense charged that the defendant intended to deprive the owner of the possession of the machine. (*People* v. *Zervas,* 61 Cal.App.2d 381 [142 P.2d 946]; *People* v. *Neal,* 40 Cal.App.2d 115 [104 P.2d 555].) While it is true that the intent may be inferred from the facts and circumstances of a particular case, there must be substantial evidence from which the intent may reasonably be determined. (*People* v. *Zervas, supra.*) In the present case the evidence is undisputed that the defendant took the car with the express con-

sent of the owners. Even though it may be assumed that a failure to return the machine within a reasonable time for which its custody was entrusted to the defendant, might amount to a constructive taking of the vehicle without consent, the defendant was not charged with *taking* the machine without consent. Under such construction there would be a fatal variance between the allegations of the information and the proof.

In the Zervas case, *supra,* a judgment of conviction of two defendants prosecuted under section 503 of the Vehicle Code was reversed on appeal, for lack of proof of an intention to deprive the owner of the possession of the automobile. In that case the machine was not obtained with the consent of the owner. A third defendant named Evilsisor, jointly charged with the offense, and who pleaded guilty, admitted that he "borrowed the car." He probably stole it. The three defendants were acquainted while they were inmates at San Quentin State Prison. He picked up the appellants on Ellis Street in San Francisco to take them to a bus which they missed, after which they drove around the city for some time before they were apprehended. The Appellate Court held that "from that evidence it cannot reasonably be inferred that the appellants had the requisite felonious intent" to deprive the owner of the possession of his machine. The court said, "The evidence is totally insufficient to sustain their conviction."

The gist of this offense, contained in section 503 of the Vehicle Code, under which the defendant was convicted, is the *driving* of an automobile "without the consent of the owner . . . and *with intent* to either permanently or temporarily deprive the owner thereof of his title to or possession of such vehicle." ▮ Section 499b of the Penal Code has no application to this case because that section depends upon the *taking* of the machine "without the permission of the owner." In the present case the evidence is undisputed that the defendant took the machine at the request of the owner to perform the particular mission of conveying the lieutenant to the airfield. ▮ The burden was on the prosecution to affirmatively prove that the defendant *drove the car with the intent* to deprive the owner of its possession. ▮ Does the evidence show that fact? We think not. There is no evidence to show that the defendant drove the machine beyond the direct course to and from the airfield in performing his mission. Of course he would have been guilty of driving it

without the consent of the owner if he had violated his instructions by driving it to San Francisco or some other remote place beyond the course to and from the airfield. But in this case, so far as the evidence shows the fact to be, he may have become intoxicated by drinking whiskey from a bottle which he possessed without even getting out of his machine on the way back. He was evidently returning to his employers' place of business when the car was stalled on the railroad track for lack of gasoline, for it was found in the outskirts of Stockton at four o'clock the following morning. The gasoline tank may not have contained sufficient gas with which to make the round trip; or the defendant may have stopped on his return trip at a roadhouse by the highway to quench his thirst and he may have imbibed too much liquor. In either case it could not be said he was *driving* the vehicle with the intent to deprive the owner of its possession. The most that may be said under the proved facts of this case is that the defendant *retained* the car for about ten hours beyond the time ordinarily required to perform his mission. ■ Section 503 of the Vehicle Code does not make it an offense to retain a machine specifically entrusted to one by the consent of the owner beyond the time reasonably required to perform a designated mission. ■ If he merely retained possession of the car by letting it stand parked for a few hours at a roadhouse by the side of the highway, without driving it, or it was detained by becoming stalled on a railroad track for lack of gasoline, it may not be said it was either *driven* or taken without the consent of the owner with the intent to deprive the owner of its possession. The information in this case specifically charges the defendant with *driving* the car, without the consent of the owner, with the intent to deprive the owner of the possession of the machine. The defendant did not admit in his statement made to the officer that he "rode around" in the car. When he was asked if he had permission to "ride around" in the car, he said "No." But in effect he denied riding around in the car, for he added, "I just took Bob Renney's brother out there" to the airfield. When he was further asked "You were to come back?" he replied, "Yes, I have been there for about eight months now. This is the first time that anything like this has happened; it will never happen again." The reasonable inference to be drawn from the latter statement is that he regretted the fact that he became intoxicated on that mission

to the airfield; that he had no intention of delaying his return or depriving his employer of the use of his automobile, and that it would never happen again. The proof lacks evidence of an intention to deprive the owner of the possession of his car. At least it does not show that he was *driving* the machine during the delay. The learned trial judge recognized the foregoing distinction for in pronouncing judgment he said, ''I will state to you, informally, that I do consider this a case of drunken driving; perhaps it should have been disposed of as such.'' Moreover, recognizing the fact that the proof in this case lacks evidence of a motive on the part of the defendant to violate the statute, the trial judge, in his discretion, leniently imposed the penalty of a mere fine of $100, or upon failure to pay that sum, that he be imprisoned in the county jail one day for each three dollars thereof. We are of the opinion the evidence fails to show that the defendant drove the car without the consent of the owners, with the intent to deprive the owners of the possession of the machine.

Reasonably construed, we infer that this is merely a case of drunkenness, just as the trial judge wisely said that it was. Not only was the court authorized under section 22 of the Penal Code, but it was its duty, to consider that intoxication of the driver in determining the necessary element of intent or purpose, if any, which prompted him to retain custody of the car for a period of ten hours. The reasonable probability is that he unintentionally became intoxicated, and had no intention of depriving the owners of their automobile.

The judgment is reversed.

Adams, P. J., and Peek, J., concurred.