[Crim. No. 4097. Second Dist., Div. One. June 23, 1947.]

THE PEOPLE, Respondent, v. EDMUND ALBERT
GHERNA, Appellant.

Samuel Schwartz for Appellant.

Fred N. Howser, Attorney General, and Frank Richards, Deputy Attorney General, for Respondent.

YORK, P. J.—Defendant, under a plea of not guilty, was convicted by the court, sitting without a jury, of a violation

of section 503 of the Vehicle Code, as charged in count two of the information. He was adjudged not guilty on count one which charged grand theft, and was sentenced to the county jail for one year; the execution of such sentence was suspended, and defendant was granted probation for a period of three years upon condition that he pay a fine of $200, refrain from the use of intoxicating liquor and remain out of places where liquor is served. Defendant had also pleaded not guilty by reason of insanity, which plea he withdrew after two psychiatrists appointed by the court to examine defendant as to his sanity had testified in his behalf.

The instant appeal is from the judgment of conviction and from the order denying his motion for a new trial.

It appears from the record that appellant and his cousin, Tony Joe Espinosa, were together during all of the evening of May 1, 1946, and had been at a bar where appellant drank some wine and beer. About 11 p. m. that night they were involved in an accident under the following circumstances; Espinosa was driving a tractor in which appellant and a young lady were passengers and they ran out of gas, whereupon Espinosa pulled to the side of Rosecrans Avenue about 100 yards east of Prairie Avenue in the county of Los Angeles, and the boys got out of the tractor leaving the young lady in the cab. As appellant was siphoning gasoline from the back tank to put in the side tank to enable them to get to a service station, an automobile collided with the rear of the truck and tractor knocking both boys up on the tank and the girl out of the cab. Shortly after the collision, State Highway Patrolman White and Cooper arrived on the scene; made a routine check-up and left to call a tow truck. Said officers later returned to the scene of the accident and parked their car on the south shoulder of Rosecrans about 15 or 20 feet behind Espinosa's tractor and truck and headed in the same direction "with the lights on floodlighting the accident scene and the red light pointing to the rear." At this time, appellant was "down at the corner" a couple of hundred yards away, trying to get a ride from a motorist. While the two officers, Espinosa and the driver of the car which collided with the tractor were standing talking at the scene of the accident, (in the words of Espinosa) "all of a sudden a police car drove by, it was the same police car that the officers had just parked and it drove by with all the lights on it, everything, the headlights, and one of the officers said to the other, 'Isn't that our car?' And the officer said, 'I believe

it is.' He said, 'What will we do?' And they stood sort of helpless for a moment''; that within two or three minutes the officers flagged down a passing automobile and started in pursuit of the police car, which they caught at Rosecrans and Figueroa three and three tenths miles from their starting point. Officer Cooper testified that ''the car was stopped at the intersection of Rosecrans and Figueroa when we came up with it . . . and a man in soldier's uniform was running away from the car''; that appellant was about 15 or 20 feet from the police car when the officers arrested him.

Appellant testified at his preliminary hearing that while he was siphoning gasoline somebody ran into the back of the tractor and knocked them all flying and from that time on he did not remember a thing; that if they said he did it, he guessed he did, but he did not remember anything about it. At the trial, appellant testified that he did not remember taking the police car; that he did not remember being arrested; that the last thing he remembered was siphoning gasoline, and that he regained his memory the next morning when he woke in the county jail and wondered where he was.

 It is here urged that appellant's motion to set aside the information made pursuant to section 995, Penal Code, at the time of his arraignment in superior court, should have been granted, because the offense, if any, was a violation of section 499b of the Penal Code, a misdemeanor, hence the trial court was without jurisdiction. The basis of this contention is that, even though the information properly pleaded an offense under section 503 of the Vehicle Code by alleging that the taking of the police car was in the absence of the owner, nevertheless the evidence presented at the preliminary hearing showed that such taking was in the presence of the officers.

Section 503, Vehicle Code, reads as follows:

''Any person who drives or takes a vehicle not his own, without the consent of the owner thereof and in the absence of the owner, and with intent to either permanently or temporarily deprive the owner thereof of his title to or possession of such vehicle, whether with or without intent to steal the same, . . . is guilty of a felony, and upon conviction thereof shall be punished by imprisonment in the State prison for not less than one year nor more than five years, or in the county jail for not more than one year or by a fine of not more than five thousand dollars or by both such fine and imprisonment. . . .''

Section 499b of the Penal Code provides that ''Any person

who shall, without the permission of the owner thereof, take any aircraft, automobile, bicycle, or other vehicle, for the purpose of temporarily using or operating the same, shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine not exceeding two hundred dollars, or by imprisonment not exceeding three months, or by both such fine and imprisonment.''

In *People* v. *Bailey,* 72 Cal.App.2d Supp. 880, 882-883 [165 P.2d 558], a prosecution under section 499b, *supra,* wherein it was contended that said section had been repealed by implication by the enactment of section 503 of the Vehicle Code, it was held that ''although there is a considerable overlapping'' of the provisions of the two sections, ''their identity is not so complete that section 499b is entirely repealed by section 503, or by any of its predecessors. . . . limiting our attention to automobiles, which are covered by both sections, and with which the complaint before us was concerned, we find the two sections do differ in at least two material respects. Section 503 is limited to cases where an automobile is driven or taken in the absence of the owner. Section 499b is not so limited; it applies, whether the taking was in the owner's absence or presence. The felony of section 503 is not committed, furthermore, unless the taking, or driving, was with the specific intent to deprive the owner of title or possession. (*People* v. *Zervas* (1943), 61 Cal.App.2d 381, 384 [142 P.2d 946] ; *People* v. *Gibson* (1944), 63 Cal.App.2d 632, 637 [146 P.2d 971], while section 499b makes it a misdemeanor to take an automobile, without the owner's consent, although no intent to deprive the owner of title or possession motivates the taking. . . .

''One who takes an automobile in the presence of the owner, therefore, with the intention of temporarily using or operating it, without the owner's consent, violates section 499b, Penal Code, but not section 503, Vehicle Code. Moreover, whether the taking is or is not in the owner's presence, if the purpose of the taking is not to deprive the owner either of its title or of its possession, but is temporarily to use or operate it, without his permission, the taking is a misdemeanor, not a felony.'' See, also, *People* v. *Ball,* 204 Cal. 241 [267 P. 701].

It was testified by Officer Cooper that ''We were in the process of investigating a traffic collision approximately 300 feet east on Rosecrans, east of the intersection of Prairie Boulevard. We had the patrol car parked on the south

shoulder, with the lights on floodlighting the accident scene, and the red light pointing to the rear.

"Q. How far was that car from the scene of the accident? A. Approximately 15 or 20 feet. Q. Did you there at that time discover that the car was missing? A. While we were in the process of interviewing witnesses the car was started up and driven past us. Q. After you saw the car was driven past you what, if anything, did you do with reference to the car? A. Flagged down an approaching car and asked the driver . . . if he would pursue the car. . . . we went in pursuit of the car . . . a distance of three and three-tenths miles, catching it at Rosecrans and Figueroa Streets. . . . When we came up to the car it was halted near the intersection on the highway and a man in soldier's uniform was running away from the car."

Officer White testified as follows: "At the scene of the wreck we were investigating there, why, I had seen the defendant prior to the time that he walked away from the scene down to the corner and attempted to get a ride down there from a motorist, and when he came back apparently to the car as the car was driven away from the scene the headlights of the tow truck were pointed right at that patrol car, and I noticed him from a side view as he left the scene of the accident. Then we later apprehended him down at the corner with the car. Q. At the time you were chasing the car or the time the patrol car stopped did you observe who was driving the patrol car? A. No, he had left it at that time about 20 feet away. Q. Did you have some conversation with him on that occasion? A. I did. . . . I asked the defendant why he took the car, and he said he thought it was a good idea as nobody would give him a ride down at the scene of the wreck. I asked him if he had been drinking, and he said yes, and he said he thought it would be a good idea to take the patrol car for a ride." Upon cross-examination, the court asked the witness the following questions: "You apprehended the defendant where he left the car? A. Yes, sir. Q. Did you form an opinion at the time you apprehended him as to whether or not he was intoxicated? A. Yes, I did. Q. What was the opinion? A. That opinion was that he had been drinking. He was what we call a border line case, but I would not say I would lock him up for 502."

Bouvier's Law Dictionary defines "absence" as "the state of being away from a place"; and the word "absent" as

"being away from; at a distance from; not in company with."

The evidence in the instant case establishes that while the officers were present at the scene of the accident, they were away from, or absent from, the place where the car was parked. Therefore, both the taking and the driving of the car were done by appellant in the absence of the officers; hence, appellant's point that the superior court had no jurisdiction of the offense charged is without merit.

It is also contended that there is no evidence of felonious intent or any conscious intent to take the car.

In *People* v. *Gibson,* 63 Cal.App.2d 632, 635 [146 P.2d 971], it is stated: "Under section 503 of the Vehicle Code it is essential for the prosecution to prove as a necessary element of the offense charged that the defendant intended to deprive the owner of the possession of the machine. (*People* v. *Zervas,* 61 Cal.App.2d 381 [142 P.2d 949]; *People* v. *Neal,* 40 Cal. App.2d 115 [104 P.2d 555].) While it is true that the intent may be inferred from the facts and circumstances of a particular case, there must be substantial evidence from which the intent may reasonably be determined. (*People* v. *Zervas, supra.*)"

In *People* v. *Zervas, supra,* (61 Cal.App.2d 381, 384), the court stated: "While it is generally true that the question of felonious intent is for the trier of fact, and may be inferred from all the circumstances (*People* v. *Deininger,* 36 Cal. App.2d 649 [98 P.2d 526]; *People* v. *Perkins,* 8 Cal.2d 502 [66 P.2d 631]; *People* v. *Gilbert,* 26 Cal.App.2d 1 [78 P.2d 770], there must be some reasonable basis in the evidence for the inference. In prosecutions under section 503 of the Vehicle Code, while it is not incumbent upon the prosecution to prove an intent to steal the car, it is necessary to prove an intent to deprive the owner of the possession of the car. (*People* v. *Score,* 48 Cal.App.2d 495 [120 P.2d 62].) But that intent must be proved as a fact. The rule is thus stated in *People* v. *Neal,* 40 Cal.App.2d 115 at page 117 [104 P.2d 555]: 'Under section 503 the crime is committed when the taking or driving of the vehicle is accompanied by a lack of consent from the owner and an intent to either permanently or temporarily deprive such owner of his title to or possession of such vehicle. The intent is made an affirmative element of the crime and consequently must be proved as a fact. The proof of intent as a fact was incumbent upon the prosecution and *the taking and abandoning of the car by appellant* did not

necessarily furnish sufficient evidence from which the presence of a specific intent may have been inferred by the jury. . . .' '' (Emphasis added.)

In the instant case, appellant took the car, drove it three and three tenths miles and then abandoned it. In our opinion, the evidence adduced at the trial herein was insufficient upon which to base an inference that appellant intended to "either permanently or temporarily deprive the owner" of the car here involved of its "title to or possession of such vehicle." (*People* v. *Zervas, supra.*)

█ Appellant's motion addressed to this court to augment the record was granted, and as a result the reports of the two psychiatrists, appointed to report to the trial court on the sanity of appellant, hereinbefore mentioned, are included in the record on appeal.

The report of Dr. Victor Parkin contains the following statement: "I talked to defendant at considerable length. I was impressed with his sincerity and believe that he is telling the truth regarding the period of amnesia following the accident. His psycho-neurotic experience overseas, during which he suffered from hysterical conversion shows clearly a predisposition to just such manifestations as the above described fugue. During the examination he was quite restless. It is my opinion that the defendant suffered such a marked alteration of consciousness as to have rendered him totally irresponsible for his behavior. He was therefore unable to form a conscious intent, and was totally devoid of the capacity to distinguish right and wrong, or to know the nature and quality of his acts."

Dr. Marcus Crahan reported, among other things, as follows: "His claim of memory loss from the point of his sucking gasoline from the tractor's tank until he became oriented at the County Jail, associated with a lump on the right side of his head and a painful ear, is very strongly suggestive of a concussion syndrone, due to a blow at the time of the original accident involving the tractor and automobile. His actions in the interim were, therefore, nonresponsible, since he had no insight into the differences between right and wrong, nor as to the nature or consequences of his alleged act at the time of its commission. A concussion state closely parallels the fugue of epilepsy, in which the subject automatically uses the instrument of greatest familiarity—in this instant, a motor vehicle."

While it is true that the trier of fact is under no compulsion to accept as conclusive the opinion of an expert (Pen. Code, § 1127b), in the circumstances here presented, where the prosecution has failed to establish the specific intent required for a conviction of a violation of section 503 of the Vehicle Code, such opinions are entitled to be considered.

No question has been raised on this appeal with respect to the allegation in the information that the California Highway Patrol, H. M. Cooper and C. R. White had title to and possession of the vehicle here involved. The probability is that said vehicle was *owned* by the State of California and that possession thereof was in the California Highway Patrol and its officers.

For the reasons stated, the judgment and order appealed from are, and each of them is, reversed.

Doran, J., and White, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied July 22, 1947.