[Crim. No. 2745.   First Dist., Div. One.   Aug. 15, 1951.]

THE PEOPLE, Respondent, v. HAROLD G. HAYDON, Appellant.

John Mark Chargin for Appellant.

Irving S. Rosenblatt, Jr., and Tobriner & Lazarus, as Amici Curiae on behalf of Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn and Winslow Christian, Deputy Attorneys General, for Respondent.

BRAY, J.—This appeal presents the question of whether section 72 of the Penal Code was repealed *pro tanto* by the enactment of section 101 of the Unemployment Insurance Act (Stats. 1935, p. 1226; 3 Deering's Gen. Laws, Act 8780(d)).

## RECORD

Defendant was convicted of the crime of felony, to wit, violation of section 72 of the Penal Code, in that with intent to defraud he wilfully presented for payment a false and fraudulent claim for California unemployment insurance and received payment thereon. He does not attack the sufficiency of the evidence, but contends that the later enactment of section 101(a) of the Unemployment Insurance Act constituted a *pro tanto* repeal of section 72 of the Penal Code.

## IS SECTION 72 OF THE PENAL CODE REPEALED PRO TANTO?

Section 72 of the Penal Code, enacted in 1872, provides: "Every person who, with intent to defraud, presents for allowance or for payment to any state board . . . any false or fraudulent claim . . . is guilty of a felony."

Section 101 of the Unemployment Insurance Act (as amended, Stats. 1943, p. 3051) provides: "It is a misdemeanor: (a) Wilfully to make a false statement or representa-

tion or knowingly fail to disclose a material fact to obtain, increase, reduce, or defeat any benefit or payment under the provisions of this act . . .''

Respondent concedes that if the two provisions are in conflict section 101(a) must prevail as it is the later and more specific provision. Such conflict is clearly shown by an examination of the two sections. Section 72 makes it a felony to (1) present a false claim (2) to a state officer or board authorized to pay the claim if genuine (3) with intent to defraud. Section 101(a) makes it a misdemeanor to (1) wilfully submit a false claim or knowingly fail to disclose a material fact affecting any payment to be made under the provisions of the act (2) to the California Employment Stabilization Commission (a board authorized to pay the claim if genuine) (3) to obtain a payment under the act. Boiled down, section 72 deals with one who makes a false claim to a state board with intent to defraud. Section 101(a) deals with one who wilfully makes a false claim to the particular state board to obtain, increase, reduce or defeat any benefit or payment under the act. Section 7(1) of the Penal Code defines ''wilfully'': ''. . . when applied to the intent with which an act is done or omitted, implies simply a purpose of willingness to commit the act, or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage.'' ''The word 'knowingly' imports only a knowledge that the facts exist which bring the act or omission within the provisions of this code. It does not require any knowledge of the unlawfulness of such act or omission.'' (Pen. Code, § 7(5).) ■ In comparing merely the words ''with intent to defraud'' with the words ''knowingly'' and ''wilfully,'' there is a difference of meaning and the latter do not necessarily include the former. However, if a person wilfully or knowingly submits a claim, knowing it to be false, to the commission for the purpose of obtaining, increasing, reducing or defeating any benefit under the act, he necessarily does so to defraud. He evidences a purpose or willingness to present a false claim to affect the payment under the act and hence is presenting such claim with intent to defraud. Again, one who presents a false claim with intent to defraud is wilfully and knowingly presenting such false claim with intent to obtain, etc., a benefit or payment under the act.

■ That the Legislature specifically was providing penalties for all false claims made in relation to unemployment relief appears from an examination of article 8 of the act,

sections 100 to 102, headed "Penalties." Section 101 sets forth the offenses. In addition to the offenses set forth in subdivision (a) there are five other types of offenses which can be committed. Section 101.6 provides a catch-all. It reads: "Every person who wilfully violates any provision of this act or any rule or regulation promulgated or published by the commission in accordance with this act, is guilty of a misdemeanor." Section 102 provides that one half of all fines collected for violations of the provisions of the act shall be paid to the state treasury to the credit of the unemployment fund, and one half to the treasurer of the jurisdiction in which the offense is prosecuted. Thus, it is apparent that the Legislature was intending to provide that all offenses in violation of the provisions of the act were to.be made misdemeanors so that half of the fines therefrom would go into the unemployment fund, and the other half to the city.or county where the prosecution took place. Under section 72 of the Penal Code no fines could be imposed. (Pen. Code, § 18.) "In. the construction of a statute the intention of the Legislature, and in the construction of the instrument the intention of the parties, is to be pursued, if possible; and when a general and particular provision .are inconsistent, the latter is paramount to the former. So a particular intent will control a general one that is inconsistent with it." (Code Civ. Proc., § 1859.)

Respondent urges the application of certain other principles of statutory construction, such as the requirements that the courts are reluctant to find that a statute has been repealed by implication, and that a law should not be construed as impliedly repealing a prior law unless no other reasonable construction can be applied. Having those principles in mind, still section 72 of the Penal Code has been repealed *pro tanto* by section 101(a). While the latter section may be broader than section 72, a person submitting a false claim with intent to defraud is included therein. Respondent argues that; one making a false representation which he believes to be true would be guilty of a misdemeanor under section 101(a) but not liable under section 72. We doubt this statement. ▇ A person making a false representation which in good faith he believes to be true is not doing so wilfully, or knowingly. While he is not required to know the unlawfulnes of the act to come within the definition of "knowingly" or "wilfully" he certainly must know that his statement is false or untrue.

■ The reasoning in *People* v. *Armstrong,* 100 Cal.App.2d Supp. 852 [224 P.2d 490], where the court found that a violation of section 101(a) constituted an offense necessarily included in petty theft, applies here. There the court pointed out that to constitute a violation of section 101(a) ''There must be an intent to defraud, i.e., an intent to obtain a payment (property) wrongfully'' and that ''The false statement must be used for the purpose of perpetrating the fraud, i.e., obtaining the payment'' and that these two elements are the same elements going to make up the crime of obtaining money under false pretenses.

Respondent contends that the situation here is analogous to that in connection with section 499(b) of the Penal Code and section 503 of the Vehicle Code. Section 499(b) provides that any person, who shall without the permission of the owner, take any automobile for the purpose of temporarily using or operating it, is guilty of a misdemeanor. Section 503 of the Vehicle Code provides that any person who drives or takes a vehicle not his own, without the owner's consent and with intent to permanently or temporarily deprive the owner of his title to or possession of such vehicle is guilty of a felony. In *People* v. *Neal,* 40 Cal.App.2d 115 [104 P.2d 555], it was held that there is a distinction between these two sections in that under section 499(b), the so-called ''joyride'' statute, there need be no proof of intent to deprive the owner of his title or possession either temporarily or permanently; while under section 503 such proof is necessary. A violation of section 499(b) occurs when a person, without the consent of the owner, takes a vehicle for the purpose of temporarily using or operating it, whether or not he intends to deprive the owner of its possession or title. *People* v. *Zervas,* 61 Cal.App.2d 381 [142 P.2d 946]; *People* v. *Bailey,* 72 Cal.App.2d Supp. 880 [165 P.2d 558]; *People* v. *Gherna,* 80 Cal.App.2d 519 [182 P.2d 331], follow the Neal case. But under section 101(a) of the Unemployment Insurance Act, as well as under section 72 of the Penal Code, there must be an intent to defraud, i.e., an intent to obtain etc. a benefit or payment under the act to which the person is not entitled. *United States* v. *Gilliland,* 312 U.S. 86 [61 S.Ct. 518, 85 L.Ed. 598), cited by respondent, is not in point. One of the contentions there made was that an act of 1935 with relation to ''hot oil'' operated to repeal *pro tanto* a general act of 1934 prohibiting the filing of false claims with the government. The court held that there was no repugnancy in the subject mat-

ter of the two statutes which would justify an implication of repeal. In fact it held that the earlier act "has its place as a fitting complement" to the later act. (P. 95.) In *United States* v. *Moore*, 95 F. Supp. 227, it was pointed out that the "Hot Oil" statute considered in the Gilliland case did not condemn the "presentation of false papers" as an unlawful act nor did it provide a penalty for such conduct, while the earlier act did. In the Moore case the defendant was charged with presenting to the Wage and Hour Division of the Department of Labor certain false documents concerning wages and hours of employees. The indictment was framed in the exact language of a general criminal act. A motion to dismiss the indictment was denied on the ground that the acts alleged in the indictment were condemned by the Fair Labor Standards Act and the prosecution could proceed under its provisions as "This legislation dealing specially with this conduct prevails over the general legislation found" in the general criminal statute. (P. 228.) As in our case. In *Bartlett* v. *United States*, 166 F.2d 920, cited by respondents, the court held that there was no repugnancy between a general statute concerning false statements and a section of the Emergency Price Control Act which also made it an offense to make a false statement as to any matter required by the act. The court, construing both statutes, held that the general act was broader in scope and in degree of culpability than the special act and hence there was no implied repeal. While there is some comfort for respondent in the language of the Bartlett case, the situation between the two statutes there is not analogous to that in the case at bar for the reason that here it appears that the Legislature had worked out a scheme of penalties for any and all acts of fraud towards the matters covered by the act. *United States* v. *Serpico*, 148 F.2d 95, cited by respondent, may be distinguished from our case by the lack of similarity between the statutes involved. There defendant was tried for possessing and passing counterfeit gasoline ration coupons under a general statute prohibiting the counterfeiting of any writing for the purpose of defrauding the United States. Defendant contended that he could be prosecuted only under the Second War Powers Act because the coupons could only be issued under that act and that such act repealed *pro tanto* the general statute. In holding that there was no such repeal the court distinguished between the two acts by indicating that the general statute required an intent to defraud the United States, while the special

statute only required a showing of " 'impairment of the administration of its governmental functions' " (p. 95).
■ The rule of *Shelton* v. *United States,* 165 F.2d 241, applies here (p. 244) : " . . . the next question is whether the defendant's false oath as to liens may be prosecuted and punished under the general perjury statute. It is clearly within the statutory definition of perjury in that statute, quoted above. But there can be no question about the general rule that, absent extraordinary results of such construction, a specific later statute, rather than an earlier general one, applies to a given transaction described by both acts, i.e., generally by the earlier act and specifically by the later." ■ Also applicable here is the following from *United States* v. *Windham,* 264 F. 376, 377 : "The general rule for the construction of statutes is that, when a later statute is enacted inconsistent with a preceding statute and covering the entire ground of the subject-matter, it supersedes and impliedly repeals the preceding statute. Especially is this the case when the later statute imposes penalties of less severity for the same offenses; the rule in favor of clemency being that, where different penalties are imposed for the same offense, the lighter penalty, when imposed in a later statute, is presumed to supersede the earlier and heavier."

■ A comparison of the statutes involved here and a study of article 8 of the Unemployment Insurance Act and the scheme of penalties and their disposition, therein provided, shows that section 72 of the Penal Code was repealed *pro tanto* by section 101(a) of the Unemployment Insurance Act.

The judgment is reversed.

Peters, P. J., and Wood (Fred B.), J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 13, 1951.