[Crim. No. 17456. Second Dist., Div. Five. Dec. 3, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
JACK A. LUSTMAN, Defendant and Appellant.

**COUNSEL**

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and John H. Darlington, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**STEPHENS, J.**—Defendant is appealing from the conviction of three counts (I, II and IX) of grand theft (Pen. Code, § 487, subd. 1) and two counts (VI and VII) of forgery by fictitious name (Pen. Code, § 470). Defendant was found not guilty of the remaining four counts of the nine-count information. All of the violations are felonies. After waiver of trial by jury, the case was submitted on the transcript of the preliminary hearing, with some additional testimony taken at the trial.

Defendant contends that the violations of which he was convicted are activities proscribed by Unemployment Insurance Code sections 2101 and 2102, and that he can only be prosecuted for misdemeanors, as provided by those code sections.

The facts are that defendant devised a scheme in which he created a fictitious company-employer ("Roberts Engineering Co."), and in the name of that fictitious company-employer, reported earnings for fictitious employees during the times mentioned in the information. At the preliminary hearing, state Department of Employment investigators testified that no

company by the name of "Roberts Engineering Co." at any of the addresses given by defendant on his claim forms, nor at the addresses listed on the forms purportedly filed by "Roberts Engineering Co.," in fact existed at the times mentioned. The investigators further established that they could not find anyone by the name of "Thomas O. Roberts" at any of the residence addresses listed on the employer's forms. The prosecution produced an apartment manager from one of the addresses listed who said she had a tenant named Thomas Roberts, whom she identified as the defendant. The prosecution further produced three additional witnesses who knew the defendant as Jack Lustman, Ed Lee, and Thomas Roberts, respectively. During the trial, the prosecution placed into evidence a certified copy of a California driver's license in the name of "John Edward Lee," imprinted with a photograph of the likeness of defendant, whose true name is Jack Lustman.

Because of the common relationship of certain of the evidentiary facts to certain of the counts, we first deal with counts I and IX, then with counts VI and VII, and lastly with count II.

Count I of the information (charging a violation of Pen. Code, § 487, subd. 1) was based upon a fraudulent disability claim presented to the State of California, Department of Employment (hereinafter referred to as Department). On May 17, 1967, defendant filed a claim for disability benefits in the name of Jack Lustman. The application form executed by defendant indicated that he had last worked on November 18, 1966. The Department then forwarded a form to the named last employer, "Roberts Engineering Co." (later proved to be a nonexistent and fictitious employer). The Department's form sought wage information and the reason for work stoppage. This form was returned to the Department, signed in the name of the fictitious employer, Roberts Engineering Co., and indicated that defendant had earned $200 during his last full week of work. On June 15, 1967, defendant had forwarded a letter to the Department enclosing a purported copy of his income tax W-2 form showing the same fictitious employer and indicating that defendant had earned $4,400 during the last three calendar quarters of 1966. The Department initially had denied any benefits, but after recomputations based upon the W-2 form, made an award of $1,274, payable at $49 per week. On July 26, 1967, a check for $98 was issued to defendant and forwarded to a Beverly Hills post office box address. A Department investigator observed defendant remove from the post office box the envelope containing the check. The investigator saw the check at the time defendant asked him to read the amount of the check, stating, "I cannot tell without my glasses." A subsequent check for $112 was mailed to defendant. Both checks were endorsed and negotiated, and paid by the State of California.

Defendant was subsequently arrested at his apartment. During the search of defendant's apartment, copies of correspondence and the employer's copy of forms in the company name of "Roberts Engineering Co." were found.

Count IX of the information (charging a violation of Pen. Code, § 487, subd. 1) was based upon a fraudulent unemployment insurance claim submitted to the State of Nevada by defendant in the name of "Ed Lee." Since defendant was in California at the time of submission of this claim, the California Department processed the claim forms for the State of Nevada, as an agent for Nevada. On March 13, 1967, the Nevada Department of Employment Security received a claim form which had been processed by the Santa Monica office of the California Department, requesting unemployment insurance benefits and showing "Roberts Engineering Co." as the former employer; this was signed by "Ed Lee" as the claimant-employee. This claim was refused on March 20, 1967, on the basis that there was no record of wages filed with the State of Nevada. On March 20, 1967, a request for reconsideration was filed, together with an executed dependency questionnaire, signed by "Ed Lee." Accompanying this request for reconsideration was a W-2 form indicating wages earned and paid in Nevada to "Ed Lee" by "Roberts Engineering Co." On the basis of the W-2 form, Nevada changed the benefit payable from zero to $1,066.

On August 8, 1967, a Department investigator saw defendant submit an interstate claim form (used to obtain unemployment benefits from Nevada) at the Santa Monica office of the Department, which form bore the signature "Ed Lee." (This was the same investigator who had seen defendant remove the disability-benefits check bearing the name "Jack Lustman" from the Beverly Hills post office box on July 26, 1967.) This investigator then followed defendant to the Department's disability office.

The State of Nevada received 20 additional interstate claims bearing the signature "Ed Lee," and pay warrants by the State of Nevada were issued on these claims. In all, Nevada paid 24 claims in the amount of $61 each and one claim in the amount of $59, by warrants issued to "Ed Lee." During a portion of the period in which defendant was receiving unemployment insurance benefits from the State of Nevada, he was concurrently receiving disability benefits from the State of California.[1]

Defendant testified during the trial and admitted receiving unemployment and disability benefits from the State of California and the State of Nevada, but claimed that he attempted to return the amounts received from Cali-

---

[1] It is an express violation of Unemployment Insurance Code section 2628 to receive disability benefits from the State of California while receiving unemployment insurance benefits from any other state.

fornia, unsuccessfully. Defendant stated he could not recall the exact dates of his employment and layoffs because he had been the victim of a criminal assault just prior to the trial and had sustained a head injury, causing his memory to be faulty.

The forgery counts (VI and VII) of the information were based on two Nevada warrants made payable to "E. Lee" and endorsed on the reverse side "Ed Lee." On April 24, 1967, defendant presented to the Automobile Club of Southern California a Nevada warrant payable to, and endorsed, "E. Lee," to be applied against an installment loan account in the name of "J. A. Lustman." On July 24, 1967, defendant presented a Nevada warrant payable to and endorsed "E. Lee" to the Southern California Savings and Loan Association for deposit to an account in the name of "Ed Lee." Defendant personally signed a withdrawal slip with the name "Ed Lee" in the presence of the teller, and the signatures on the warrant and the withdrawal slip were similar.

Count II of the information (charging a violation of Pen. Code, § 487, subd. 1) was based upon a fraudulent unemployment insurance claim submitted to the California Department of Employment. On January 5, 1965, an employer's registration form was filed by "Thomas O. Roberts," doing business as "Roberts Engineering Co." at 601 South Vermont Avenue, Los Angeles, California. Subsequently, quarterly reports for the quarters ending September 1965, December 1965, March 1966, and June 1966 were filed, signed by "T. O. Roberts." The quarterly report for September 1965 indicated that "Roberts Engineering Co." had one employee, Jack Lustman, and that he had been paid $1,000 during that quarter. The subsequent quarterly reports indicated that there were no employees for the period from October 1965 through June 30, 1966. A quarterly report for the quarter ending September 1966 indicated that "Roberts Engineering Co." had gone out of business. On February 28, 1966, defendant filed a claim in the name of Jack Lustman (his true name), indicating that the last day he had worked was August 6, 1965. The Department granted an initial benefit of $500, payable at $40 per week. On March 14, 1966, a request for reconsideration was filed by "Jack Lustman," based upon an assertion that he had earned $1,800 instead of $1,000 during the third quarter of 1965. A verification form was sent to "Roberts Engineering Co.," which was returned to the Department, indicating that $1,800 in wages had been paid to defendant. As a result of this information, the benefit payable to defendant was increased to $900, payable at $65 per week. For the period March 12, 1966, through April 30, 1966, defendant received eight pay orders in the amount of $40 each. On May 9, 1966, four additional pay orders were issued, one for $5, and three for $65 each. Subsequently, six additional pay orders were issued, five in the amount of $65 each, and one in the amount

of $55, covering the period from May 9, 1966, through June 6, 1966. All of the pay orders were paid at the cashier's window in the Department's office.

On appeal, defendant contends that he cannot be charged and convicted under Penal Code sections 470 and 487, subdivision 1 since they are superseded in part by Unemployment Insurance Code sections 2101 and 2102 because his activities fall expressly within the prohibitions of the Unemployment Insurance Code.

Penal Code section 487, subdivision 1, in pertinent part, reads as follows: "[G]rand theft is committed . . . : 1. When the money, labor or real or personal property taken is of a value exceeding two hundred dollars. . . ." Penal Code section 484 defines theft as: "Every person . . . who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, . . . is guilty of theft." Unemployment Insurance Code section 2101 reads as follows: "It is a misdemeanor to wilfully make a false statement or representation or knowingly fail to disclose a material fact to obtain . . . any benefit or payment . . . under . . . (a) The provisions of this division. . . ." Section 2102 reads as follows: "It is a misdemeanor for any person residing in this State to wilfully make a false statement or representation . . . to obtain or increase benefits or payments under the provisions of the unemployment insurance law of any other state."

It is the rule that where a general statute includes the same subject matter as a special statute and those statutes are in conflict, the special statute will be treated as an exception to the general statute, whether passed before or after the general enactment. (*In re Williamson,* 43 Cal.2d 651 [276 P.2d 593]; *People* v. *Scott,* 259 Cal.App.2d 589 [66 Cal.Rptr. 432]; *People* v. *Clark,* 241 Cal.App.2d 775 [51 Cal.Rptr. 7].) A defendant cannot be prosecuted under a general statute where a special statute covers the same activity. (*People* v. *Scott, supra; People* v. *Fiene,* 226 Cal. App.2d 305 [37 Cal.Rptr. 925]; *People* v. *Wood,* 161 Cal.App.2d 24 [325 P.2d 1014].)

In *People* v. *Koch,* 4 Cal.App.3d 270 [84 Cal.Rptr. 629], the defendant was convicted of grand theft under Penal Code section 487, subdivision 1. In that case the conviction was overturned because the court found that Penal Code section 487 conflicted with Unemployment Insurance Code section 2101. The basis of the *Koch* decision came from the ruling in *People* v. *Gilbert,* 1 Cal.3d 475 [82 Cal.Rptr. 724, 462 P.2d 580], in which the court interpreted the words "to obtain" in a similarly worded

section in the Welfare and Institutions Code to mean that the state must part with value, and therefore was in conflict with Penal Code section 484.

■ The People contend that the ruling in *Gilbert* precludes the finding that Penal Code section 487 and Unemployment Insurance Code sections 2101 and 2102 are "in conflict," and that the *Koch* case is not controlling, but rather, the pre-*Gilbert* rule expressed in *People* v. *Dale,* 239 Cal.App.2d 634 [49 Cal.Rptr. 253] is. The *Dale* case ruled that Unemployment Insurance Code section 2101 is not in conflict with Penal Code section 484.

The statute involved in the *Gilbert* case was Welfare and Institutions Code section 11482, which states: "Any person other than a needy child, who wilfully and knowingly, with intent to deceive, makes a false statement or representation or knowingly fails to disclose a material fact *to obtain aid,* or who, knowing he is not entitled thereto, *attempts to obtain aid* or to continue to receive aid to which he is not entitled, . . . is guilty of a misdemeanor." (Italics added.) The court in *Gilbert* was following the cardinal rule in construction and interpretation of statutes that no wording is to be considered as surplusage. It therefore ruled that the words "to obtain aid" meant "in obtaining aid" and did not include attempts to obtain aid fraudulently, since there was a specific clause covering attempts. The court then found that the words "to obtain aid" required that the victim part with value, which "conflicts" with Penal Code section 484.

Thus, the court in *Gilbert* interpreted Welfare and Institutions Code section 11482 to cover not only attempts to obtain aid for needy children by fraudulent means, but also the successful consummation of a fraudulent scheme in the receipt of such aid. In the opinion of the court, the Legislature expressed its intent to punish either act as a misdemeanor only.

In *People* v. *Armstrong,* 100 Cal.App.2d Supp. 852 [224 P.2d 490] and in *People* v. *Haydon,* 106 Cal.App.2d 105 [234 P.2d 720], the offense covered by predecessor legislation now encompassed in Unemployment Insurance Code section 2101 was interpreted as being identical with the offense of "attempted theft by false pretenses." As stated in *Armstrong,* the elements constituting a violation of section 2101 are: (1) an intent to defraud; (2) a false statement must be used for the purpose of perpetrating the fraud. No other elements are necessary to constitute a violation of section 2101. The interpretation expressed in *Armstrong* and *Haydon* clearly classifies a violation of section 2101 as an "attempt" crime, and not one which deals with completed acts.

■ A special statute does not supplant a general statute unless all the requirements of the general statute are covered in the special statute.

(*People* v. *Phillips,* 64 Cal.2d 574, 581-582 [51 Cal.Rptr. 225, 414 P.2d 353].) ■ To constitute a violation of Penal Code sections 484 and 487 by obtaining property by false pretenses, the following requirements must be met: (1) there must be an intent to defraud; (2) there must be actual fraud committed; (3) false pretenses must be used for the purpose of perpetrating the fraud; and (4) the fraud or false pretenses must have caused the owner to part with his property. ■ A violation of Unemployment Insurance Code section 2101 requires the occurrence of only two of the four elements of the crime of theft by false pretenses. More specifically, the corpus delicti of a violation of section 2101 does not require that a person part with something of value. Thus, Penal Code sections 484 and 487 are not in conflict with section 2101 of the Unemployment Insurance Code, and the two statutes may stand together.

The *Gilbert* decision was concerned with a statute which specifically included an "attempt" clause. The statutes under consideration in this case, however, do not contain an attempt clause, and to construe the words "to obtain aid" to mean attempts to obtain aid does not result in surplusage in the statutes under consideration, and does not conflict with *Gilbert.*

■ Additionally, the legislative intent regarding the interpretation of section 2101 seems clear. The *Armstrong* and *Haydon* cases were decided in 1950 and 1951, respectively. Section 2101 became effective in 1954. This section was a reenactment of the Unemployment Insurance Act, section 101(a). ■ The Legislature can be presumed to know of existing judicial interpretation, and a reenactment of a statute without change in wording indicates the Legislature's approval of the judicial intepretation. (*In re Gladys R.,* 1 Cal.3d 855 [83 Cal.Rptr. 671, 464 P.2d 127]; *People* v. *Hallner,* 43 Cal.2d 715 [277 P.2d 393].) ■ Since the *Armstrong* and *Haydon* cases ruled that Unemployment Insurance Act section 101(a) covered attempts to obtain aid by false representations, the legislative intent is clear that attempts only are to be punished as misdemeanors, and that the successful completion of obtaining aid by false representations may be punished under Penal Code sections 484 and 487.

Suffice it to say that the above reasoning applies with equal force to violations of Unemployment Insurance Code section 2102. The salient difference from section 2101 is that the proscribed acts are those directed at fraudulently obtaining aid from any other state while residing in this state.

■ Defendant contends that Unemployment Insurance Code sections 2101 and 2102 preclude his prosecution and conviction under Penal Code section 470 for forgery. As previously stated, sections 2101 and 2102 prohibit the making of false statements or false representations in attempting to ob-

tain aid. Penal Code section 470, in pertinent part, reads: "Every person who, with intent to defraud, signs the name of another person, or of a fictitious person, . . . to, or falsely makes, alters, forges or counterfeits, any . . . check . . . ; or utters, publishes, passes or attempts to pass, as true and genuine, any of the above-named false, altered, forged, or counterfeited matters, as above specified and described, knowing the same to be false, altered, forged, or counterfeited, with intent to prejudice, damage, or defraud any person . . . is guilty of forgery." It is defendant's position that the signing of the name of "Ed Lee" to the Nevada warrants is a false representation and that he can only be charged and convicted under section 2102 since this statute is in conflict with Penal Code section 470. ■ The fundamental test as to whether statutes are in conflict with each other is the legislative intent. If it appears that the statutes were designed for different purposes, they are not irreconcilable, and may stand together. (*People* v. *Clark,* 241 Cal. App.2d 775, 779 [51 Cal.Rptr. 7].) ■ The purpose of Unemployment Insurance Code section 2102 is to prohibit and punish those who attempt to obtain aid from the state by fraudulent schemes. Penal Code section 470 is intended to punish those who sign the names of fictitious persons for the purpose of defrauding some person. Tested by this standard, the two statutes are not "in conflict" with each other, although the same act could violate both statutes (*People* v. *Kreiling,* 259 Cal.App.2d 699 [66 Cal.Rptr. 582]), assuming that we accept defendant's contention that the signing of a fictitious name to a check is a false representation within the meaning of section 2102.

■ Additionally, however, we do not find Unemployment Insurance Code section 2102 "in conflict" with Penal Code section 470 for the reason that the elements constituting a violation of section 2102 are not identical with the elements comprising the crime of forgery. The corpus delicti of forgery includes the making or passing of a false check, knowing that it is false, with the intent to defraud any person. (*People* v. *Platt,* 124 Cal. App.2d 123, 134 [268 P.2d 529].) The corpus delicti of the offense stated in section 2102, as previously pointed out, does not include all of the above elements, and does not "conflict" with Penal Code section 470. (*People* v. *Phillips, supra.*)

■ Defendant asserts that his conviction under Penal Code section 470 was improper in that it was not supported by sufficient evidence. Defendant states that at the time the checks were signed, they could not have been signed with the intent to defraud, since the fraud on the State of Nevada had already been consummated by defendant when he caused the checks to be issued by his false representations. The fact that defendant had adopted a fictitious name for the purpose of fraudulently inducing the State of Nevada to issue aid checks does not preclude prosecution for

forgery where "it appears that the assumed and fictitious name was adopted by the criminal for the specific purpose of using it in the consummation of the fraudulent transaction. In an elaborate note on this subject found in 9 A.L.R. 407 et seq., at page 411, it is said: 'But while one may sign a fictitious name which he has adopted for innocent purposes without being guilty of forgery, and while an assumption of a name generally for purposes of fraud is not sufficient to convict of forgery unless in the particular case fraud is shown in using the name, yet, if such fraud is shown, the fact that the name had been previously assumed by the one signing it, and used for purposes of fraud generally, with no reference to the particular fraud, will not prevent the signature being a forgery; one cannot acquire a right to use a name not his own for fraudulent purposes, by using it any number of times previously for such purposes.' " (*People* v. *Ryan,* 74 Cal.App. 125, 128 [239 P. 419].)

Defendant knew that his signing the name of "Ed Lee" to the checks would enable him to receive money which he was not entitled to receive. This in itself would be sufficient to show his intent to defraud. The utterance of the check endorsed with a fictitious name, fraudulently assumed, is further evidence of defendant's intent to defraud. (*People* v. *Weitz,* 42 Cal.2d 338 [267 P.2d 295]; *People* v. *Liberto,* 247 Cal.App.2d 460 [79 Cal.Rptr. 306].) There was sufficient evidence to sustain the conviction of forgery on the basis of the signing of the checks by defendant, or on the basis of uttering the checks after being signed.

The judgment is affirmed.

Kaus, P. J., and Aiso, J., concurred.

A petition for a rehearing was denied December 21, 1970, and appellant's petition for a hearing by the Supreme Court was denied January 28, 1971. Peters, J., was of the opinion that the petition should be granted.