[Crim. No. 44540. Second Dist., Div. One. June 20, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
OTHO RAYE JAMES, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Michael Tanaka, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Carol Wendelin Pollack and Susan Lee Frierson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**LILLIE, J.**—A jury found defendant guilty of a violation of section 10851, Vehicle Code in that he unlawfully drove and took a 1980 Toyota, the property of Eugene Loza, without the consent of and with the intent to deprive the owner of title to and possession of said vehicle.[1] He appeals from the judgment.

I

EVIDENCE TAKEN ON SECTION 402 EVIDENCE CODE MOTION

Some time prior to February 18, a 1980 Toyota truck, owned by Eugene Loza and parked in a parking lot was stolen; on February 18 while his sister Angelica Loza was on the San Diego Freeway she observed Eugene's truck being driven by defendant and in which defendant's brother, Douglas, was a passenger; she followed the vehicle until it came to rest on Dyer Street in

---

[1]Defendant was also charged in count I with grand theft of the 1980 Toyota belonging to Loza but before trial the People's motion to dismiss this count was granted.

front of a house which the occupants entered; she called police then waited in the vicinity. When Officers Sullivan and Pardo arrived she identified the Toyota and the house; the officers went to the front door and knocked; after defendant and Douglas emerged, she identified defendant as the driver of and Douglas as the passenger in the stolen truck; police released the truck to her but the ignition had been punched out and wires were hanging loose beneath the ignition, and the officers had to "hot wire" the car to start it.

After arresting defendant and Douglas for grand theft auto, Officer Pardo placed defendant in the back of the police car; Officer Sullivan was talking to Douglas by the gate. Officer Pardo informed defendant of his *Miranda* rights, and while reading them defendant interrupted him saying "Yeah, Yeah, I know my rights," and he would speak to him; Officer Pardo continued to read defendant's rights, then asked him whether or not he was the driver of the truck, and defendant said "Yes"; when he asked where he got the truck, defendant would not answer for a few seconds then said that he got the truck from a friend; he asked defendant "Well, did you know that the truck was stolen?" and defendant replied "Yes. I got it from a friend. His name is Danny"; defendant could not come up with the last name or address of his friend but said he got the truck in North Hollywood. Officer Prado then asked him about his brother; defendant said "Just leave him out of this. He knows nothing about it"; asked if at any time he told defendant that if he admitted to him that he was the driver of the vehicle he would let his brother go, Officer Pardo answered "I was in no power to do that"; asked if he had a conversation with defendant telling him that if he told him he knew the car was stolen he would let his brother go, the officer said "I did not." The district attorney's office ultimately let Douglas go.

For the defense, Douglas testified that after they were arrested they were placed in the rear of the police car; Officer Pardo told defendant if he admitted the car was stolen he would let him (Douglas) go, then defendant admitted he knew the car was stolen; he and defendant had driven to Studio City to drop off the truck to Danny, but Danny was not home and they returned; he overheard defendant's conversation with Officer Pardo; defendant told Officer Pardo he had borrowed it and when told by the officers the truck was stolen defendant answered he had borrowed it; when they were in the back of the police car no rights were given. Defendant testified that the officer asked him who the truck belonged to, and he said a friend of his, Danny; asked who was the driver of the truck, he said he was; he was placed in the back of the police car; Officer Pardo asked him if he knew the truck was stolen and he said no, and the officer said "come on," he had to have known it was stolen, and he said "no"; asked if he was ever given his *Miranda* rights defendant said "I can't recall"; Officer Pardo asked him if he knew his rights while they were arguing about the truck, and he said

yes, the officer said something and then they started arguing and he never finished giving him his rights; they continued to argue about who the owner was, he said "well, will you let my brother go if I [tell you] the guy's name Danny, and he said yes," then he told him he got the truck from a friend, Danny, who lived in Studio City; he thought Officer Pardo was going to let his brother go but he did not. Defendant further testified that when they first started talking in the police car, he asked Officer Pardo if he would let his brother go and, after he told him Danny's name and from where he got the truck, in another conversation Officer Pardo said "if you admit that the truck is stolen, I will let your brother go," and it was because the officer made this promise that he told him he knew the car was stolen.

The trial judge rejected the testimony of Douglas, defendant's brother; he said he was not satisfied that a promise was made by Officer Pardo "at least prior to the time that the *Miranda* warning was given," and found that Officer Pardo provided an appropriate *Miranda* warning.

## II

ADMISSION OF EXTRAJUDICIAL STATEMENT WITHOUT RESOLUTION OF VOLUNTARINESS, ERROR

On his motion, defendant challenged the admissibility of his statement to Officer Pardo on the ground it was involuntary, induced by a promise to release his brother. Appellant contends, and the Attorney General concedes, the trial court failed to decide whether or not the statement was voluntary. At the hearing two conflicting versions of the events were presented—Officer Pardo testified that after being advised of his *Miranda* rights and without any threats or promises, defendant voluntarily told him he knew the truck was stolen and that he was the driver; defendant testified Officer Pardo never completed the *Miranda* warnings and that his statement that he knew the truck was stolen and he was the driver was made in exchange for the officer's promise to release his brother. The trial court did not resolve the conflict; it erred in failing to determine if there were any improper inducements.

The trial court found, and the evidence supports the finding that appropriate *Miranda* warnings were given, and while this may be circumstantial evidence of voluntariness (*People* v. *Wright* (1976) 60 Cal.App.3d 6, 15 [131 Cal.Rptr. 311]), a statement improperly induced even after warnings are given, is involuntary thus inadmissible at trial. (*People* v. *Disbrow* (1976) 16 Cal.3d 101, 111, fn. 10 [127 Cal.Rptr. 360, 545 P.2d 272].) "It cannot be seriously argued that such advice immunizes law enforcement officers from the legal effect of later coercive practices." (*People* v. *Clark*

(1968) 263 Cal.App.2d 87, 91 [69 Cal.Rptr. 218].) Defendant was entitled to a factual determination of the issue of voluntariness and the trial court was under a duty to decide it before the statement could be admitted in evidence. (*Jackson* v. *Denno* (1964) 378 U.S. 368, 378-379, 392-394 [12 L.Ed.2d 908, 916-917, 924-926, 84 S.Ct. 1774, 1 A.L.R.3d 1205].)

Finally defendant's statement amounts to a confession. Defendant was charged with unlawfully driving and taking a certain vehicle, the property of Loza, without his consent and with the intent to deprive him either permanently or temporarily of possession of the vehicle. The following elements of the crime must be proved: (1) that the accused took *or* drove a vehicle belonging to another; (2) that the person had not consented to such taking or driving of his vehicle; and (3) that when the accused took or drove the vehicle he had the specific intent to deprive the owner either permanently or temporarily of his title to *or* possession of the vehicle. (§ 10851, Veh. Code.) The Attorney General urges that defendant's statement that he drove the vehicle, got it from his friend, Danny and knew the vehicle was stolen contains a claim of mitigation, justification or excuse to bring it within the ambit of *People* v. *Kilpatrick* (1980) 105 Cal.App.3d 401, 413 [164 Cal.Rptr. 349]. To the contrary, we find no such claim in defendant's statement,[2] and that it encompasses all elements of the crime charged. (*People* v. *Murtishaw* (1981) 29 Cal.3d 733, 756 [175 Cal.Rptr. 738, 631 P.2d 446]; *People* v. *Kilpatrick* (1980) 105 Cal.App.3d 401, 413 [164 Cal.Rptr. 349].) ■ However, we reject the contention of appellant that the admission of the confession at the trial without such resolution compels a reversal requiring a retrial. Were it not for other error in the record requiring reversal for retrial, we would reverse the judgment only for the purpose of remanding the cause to the trial court for resolution of the underlying factual dispute as to the voluntariness of defendant's confession, with directions that if the court determines the confession to be voluntary, the judgment be reinstated; if it finds the confession was made involuntarily, a new trial be ordered. (*People* v. *Bustamante* (1981) 30 Cal.3d 88, 103-104 [177 Cal.Rptr. 576, 634 P.2d 927]; *People* v. *Vanbuskirk* (1976) 61 Cal.App.3d 395, 405 [132 Cal.Rptr. 30].)

---

[2]Defendant's statement is reflected in the following testimony of Officer Pardo: "A. [by Officer Pardo]: I proceeded to ask him whether or not he was the driver of the truck as the civilian witness stated, and he said yes. [¶] Then I asked him where did you get the truck, and he wouldn't answer until a few seconds passed by, and he said he got the truck from a friend. [¶] And then I asked him 'Well, did you know that the truck was stolen?' [¶] He says, 'Yes. I got it from a friend. His name was Danny.' [¶] He could not come up with the last name or address of his friend." On cross-examination, asked the location from where defendant said he got the truck, Officer Pardo answered "Some place near Studio—North Hollywood." Asked "What was the exact question that you asked him in relation to whether the car was stolen or not if you can recall?" he answered " 'Did you know that the car was stolen?' and his exact answer was "Yeah.' "

## III

ERROR IN FAILURE OF COURT TO INSTRUCT JURY ON VIOLATION OF SECTION 499b PENAL CODE

A review of the testimony taken on trial demonstrates that the court erred in failing *sua sponte* to instruct the jury on joyriding. ██ Joyriding is defined in section 499b, Penal Code: "Any person who shall, without the permission of the owner thereof, take any automobile . . . for the purpose of temporarily using or operating the same, shall be deemed guilty of a misdemeanor . . . ." It is clear that a violation of section 499b is a necessarily included offense in a violation of section 10851, Vehicle Code, but if defendant, as here, is charged with "driving and taking" thereunder, the trial court is not obliged to instruct the jury on a lesser included offense when there is no evidence that the offense was less than that charged. (*People v. Barrick* (1982) 33 Cal.3d 115, 135 [187 Cal.Rptr. 716, 654 P.2d 1243].) We conclude that there was such evidence, and if the jury were to believe certain parts of the defense testimony, it could have convicted defendant of joyriding, a misdemeanor.

On January 14 Eugene Loza's 1980 Toyota truck was stolen from a parking lot; on February 18 his sister observed defendant driving the stolen truck on the San Diego Freeway, followed him to his residence, and contacted police who arrived shortly thereafter. Defendant told Officer Pardo he was the driver of the truck, he had gotten it from his friend, Danny, in Hollywood and he knew the truck was stolen; he could not come up with Danny's last name or address and said it was someplace in Studio City or North Hollywood.

Loza's truck, parked in front of defendant's house, could be started only by "hot wiring" it, using cut wires beneath the dashboard; the ignition device was missing and it had been punched out in the steering column leaving a hole; the radio was missing as was one of the speakers and the other speaker was damaged.

The defense was that defendant thought the truck belonged to Danny Bradley, did not know it was stolen and took it only to go home intending to return it. He testified he went out drinking with Craig Bohanan on February 17 and late in the evening Craig gave him to drive home a truck he said belonged to Danny; he did not consider the condition of the truck to be unusual because they were all mechanics, and he did not know the truck was stolen until he was arrested; he told the officers he knew it was stolen only to obtain the release of his brother who had been arrested with him.

The trial court is under an obligation to instruct on a lesser included offense which the evidence tends to prove (*People* v. *St. Martin* (1970) 1 Cal.3d 524, 532-533 [83 Cal.Rptr. 166, 463 P.2d 390]; *People* v. *Hood* (1969) 1 Cal.3d 444, 449-450 [82 Cal.Rptr. 618, 462 P.2d 370]) where there is sufficient evidence that appears to warrant consideration by the jury. (*People* v. *Wickersham* (1982) 32 Cal.3d 307, 323 [185 Cal.Rptr. 436, 650 P.2d 311]; *People* v. *Sedeno* (1974) 10 Cal.3d 703, 720 [112 Cal.Rptr. 1, 518 P.2d 913]; *People* v. *Flannel* (1979) 25 Cal.3d 668, 684 [160 Cal.Rptr. 84, 603 P.2d 1].) ■ Here defendant testified he had no intent to deprive the owner of possession; he was only using it with intention to return it. Thus if the jury believed this portion of the defense testimony, it could find defendant had no intent to deprive the owner of possession and that he was operating the vehicle without the owner's permission but took it for temporary use only. This constitutes joyriding in violation of section 499b, Penal Code, a lesser and necessarily included offense in a violation of section 10851, Vehicle Code. Inasmuch as defendant was deprived of a jury determination on every material issue presented in the evidence, reversal is mandated. (*People* v. *Tiebout* (1983) 141 Cal.App.3d 1011, 1014 [190 Cal.Rptr. 754].)

The judgment is reversed and remanded for retrial.

Spencer, P. J., concurred.

**DALSIMER, J.**—I concur with the majority, but I feel it is necessary to add some additional comments. Much confusion has been engendered by the disparate statutes dealing with offenses relating to takings of automobiles. Currently a person who takes an automobile with the intent to permanently deprive the owner thereof can be convicted of violating either Penal Code section 487 (punished either as a felony or a misdemeanor) or Vehicle Code section 10851 (punished either as a felony or a misdemeanor). A person who unlawfully takes a car for temporary use can be convicted under either Vehicle Code section 10851 (a felony or misdemeanor) or Penal Code section 499b (a misdemeanor). The confusion among the statutes has been apparent for decades. (See, e.g., *People* v. *Barrick* (1982) 33 Cal.3d 115, 133-134 [187 Cal.Rptr. 716, 654 P.2d 1243]; *People* v. *Thomas* (1962) 58 Cal.2d 121, 127-130 [23 Cal.Rptr. 161, 373 P.2d 97], disapproved in part in *People* v. *Barrick, supra,* 33 Cal.3d 115; *People* v. *Bailey* (1946) 72 Cal.App.2d Supp. 880, 881-884 [165 P.2d 558].)

This case demonstrates one recurring manifestation of the confusion. A determination as to whether Penal Code section 499b is a lesser included offense within Vehicle Code section 10851 turns entirely on the happen-

stance of whether a violation of section 10851 is charged as taking *and* driving (see *People* v. *Barrick, supra,* 33 Cal.3d at p. 135) or charged as taking *or* driving (see *People* v. *Delgado* (1983) 149 Cal.App.3d 208, 211-212 [196 Cal.Rptr. 652]).

Unlawful takings of automobiles fall within a broad range of culpability; some are appropriately punished as felonies, others as misdemeanors. Surely the adjudication required should not rest upon the grammatical distinction between disjunctive and conjunctive parts of speech. The confusion among Vehicle Code section 10851 and Penal Code sections 487 and 499b should be eliminated by either clearly delineating the difference among the statutes (see, e.g., Recommendation and Study Relating To Overlapping Provisions of Pen. & Veh. Codes (Nov. 1958) 2 Cal. Law Revision Com. Rep. (1959) pp. E-1-E-21) or by replacing them with a single coherent "wobbler" statute (see Pen. Code, § 17). The punishment should be determined by the facts of the crime rather than by quirks of pleading.