[No. H004405. Sixth Dist. July 27, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
PABLO DIAZ, Defendant and Appellant.

[Opinion certified for partial publication.*]

---

* Pursuant to California Rules of Court, rules 976 and 976.1, this opinion is certified for publication with the exception of parts IV and V.

**COUNSEL**

Kenneth H. Krebs, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Stan M. Helfman and Frances Marie Dogan, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

## ELIA, J.—

### INTRODUCTION

#### I.

Following a jury trial, defendant Pablo Diaz was convicted of driving or taking a vehicle (Veh. Code, § 10851, subd. (a)) and the misdemeanor offense of being under the influence of phencyclidine (PCP) (Health & Saf. Code, § 11550). In a bifurcated proceeding the trial court found true an allegation that defendant had served a prior prison term (Pen. Code, § 667.5, subd. (b)) and had previously suffered four felony convictions. On appeal, defendant asserts instructional error. Among other contentions, he argues that the trial court erred in instructing the jury that Penal Code section 499b requires a specific criminal intent. For reasons explained below, we affirm.

### FACTS

#### II.

Louis Lopez was the resident of a home on Inman Way in San Jose. On Friday afternoon he left for the weekend. His car, a 1982 brown Mazda with a standard gear shift, was parked in the front driveway. The Mazda was unlocked and the keys were inside. Lopez did not give anyone permission to use the car while he was gone.

At approximately 9 p.m. that evening, Jeffrey Dreyer, also a resident of Inman Way, heard some loud noises coming from the house next door where a couple named Al and Maria live. When he went outside to investigate, he saw defendant shouting while he pounded on Al and Maria's front door. Soon after, defendant began marching around the front yard, swinging his arms and lifting his knees after which he marched down the street, turned into Lopez's driveway, and then disappeared from view. About 10 minutes later, Dreyer saw the brake lights of the Lopez car go on and heard the tires screeching. The car lurched back and forth as it travelled down the driveway, apparently hitting the driveway gate along the way. As it reached the street, the car stopped. Defendant got out of the vehicle and ran towards Dreyer, who had joined Al in his front yard. At this point, Dreyer retreated into his own home and called the police.

One of the officers responding to the scene located defendant in Al's darkened garage. Defendant was wearing a black hat and jacket. The officer asked defendant to step outside and he complied. Defendant exhibited

various symptoms of PCP intoxication, including a blank stare, a robotic gait, slurred and fragmented speech, and horizontal and vertical nystagmus. Based on his training and experience, the officer concluded that defendant was under the influence of PCP. It was the officer's opinion, however, that defendant was oriented to time and place and able to follow directions. A chemical analysis of defendant's blood revealed the presence of PCP.

At trial, San Jose Police Officer Dale Morgan was qualified as an expert on the effects of PCP and, based on a hypothetical question encompassing evidence of defendant's behavior and physical symptoms, opined that defendant was under the influence of PCP at the time of the underlying events. Based on his training and experience, the officer testified it is possible for an individual who is under the influence of PCP to form and carry out a plan. The officer had observed individuals commit thefts and/or other crimes while under the influence of the drug.

Dr. James Missett, a psychiatrist, was qualified as an expert on the subject of PCP and mental states. Presented with substantially the same hypothetical facts concerning defendant's behavior and symptoms as was Officer Morgan, Dr. Missett also opined that defendant was under the influence of PCP at the time of the present offenses. He further testified that the effects of PCP are "essentially unpredictable" in that any given person can have a wide variety of experiences and reactions. It is common for persons under the influence of PCP to have difficulty sustaining organized and directed thought. The higher the level of intoxication, the more likely it is that an individual may have difficulty in forming mental intents. Dr. Missett was unable to say, based on the hypothetical facts presented to him, whether defendant could have formed the intent to deprive the Mazda owner of his car. He did indicate, however, that there was a "reasonable possibility" that defendant did not have any mental intent at all. On the other hand, the doctor testified that it is also possible for PCP to impair judgment but, at the same time, not have an effect on an individual's intentionality. In order to determine an individual's ability to reason while under the influence of PCP, one looks to the totality of the circumstances.

### DISCUSSION

### III.

Defendant was charged with a violation of Vehicle Code section 10851. The court also instructed the jury on the lesser included offense of Penal Code[1] section 499b,[2] commonly referred to as the "joyride" statute.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] Section 499b provides in relevant part: "Any person who shall, without the permission of the owner thereof, take any automobile . . . for the purpose of temporarily using or operating the same, shall be deemed guilty of a misdemeanor . . . ."

██ Defendant contends the trial court erred in instructing the jury, pursuant to CALJIC Nos. 2.02 (Sufficiency of Circumstantial Evidence to Prove Specific Intent) and 3.31 (Concurrence of Act and Specific Intent) that section 499b is a crime which requires a specific, rather than a general, criminal intent. It is argued that the alleged error discouraged the jury from convicting defendant of the lesser charge. Defendant also contends that the jury confusion engendered by the court's erroneous instructions on the intent requirements of section 499b was enhanced by the court's reading of CALJIC No. 17.10.

This court was not provided with the reporter's transcript of the court's charge to the jury. However, pursuant to our order of February 14, 1989, the record on appeal was augmented to include the reporter's transcript of the jury instructions given on January 14, 1988. That transcript indicates that the jury was instructed pursuant to CALJIC No. 2.02 as follows: "The specific intent with which an act is done may be shown by the circumstances surrounding the commission of the act. But you may not find the defendant guilty of the offense charged in Count One or the lesser offense in Count One of the Penal Code 499b, taking for temporary use, unless the proved circumstances not only are consistent with the theory that he had the required specific intent but cannot be reconciled with any other rational conclusion. [¶] Also, if the evidence as to any such specific intent is susceptible of two reasonable interpretations, one of which points to the existence of the specific intent and the other to the absence of the specific intent, it is your duty to adopt the interpretation which points to the absence of the specific intent. If, on the other hand, one interpretation of the evidence as to such specific intent appears to you to be reasonable and the other interpretation to be unreasonable, it would be your duty to accept the reasonable interpretation and to reject the unreasonable."

The court gave the following modified version of CALJIC No. 3.31: "In the crime charged in Count One of the Information, namely, taking or driving a vehicle, and the lesser offense in Count One, violation of Penal Code section 499b, a misdemeanor, taking for temporary use, there must exist a union or joint operation of act or conduct and a certain specific intent in the mind of the perpetrator, and unless such specific intent exists, the crime to which it relates is not committed. The crime of driving or taking a vehicle in Count One requires the specific intent to deprive the owner of title or possession either permanently or temporarily. The specific intent required in the lesser offense in Count One, taking for temporary use, the specific intent is to temporarily use or operate such vehicle."

██ In *People* v. *Hood* (1969) 1 Cal.3d 444, 456-457 [82 Cal.Rptr. 618, 462 P.2d 370], our Supreme Court expressed the distinction between specific and general intent crimes thusly: "When the definition of a crime

consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent." ▮ Applying these principles to the language of section 499b, we find that the crime does, indeed, require a specific intent on the part of the perpetrator.

We find support for our conclusion in *People* v. *Bailey* (1946) 72 Cal.App.2d Supp. 880 [165 P.2d 558]. In analyzing the distinction between Vehicle Code section 503, from which Vehicle Code section 10851 is derived, and section 499b, *Bailey* observed that a violation of section 503 is not committed "unless the taking, or driving, was with the specific intent to deprive the owner of title or possession [citations], while section 499b makes it a misdemeanor to take an automobile, without the owner's consent, although no intent to deprive the owner of title or possession motivates the taking." (*Id*. at p. Supp. 882.) *Bailey* went on to disagree with the conclusion reached by *People* v. *Neal* (1940) 40 Cal.App.2d 115, 118 [104 P.2d 555], and *People* v. *Zervas* (1943) 61 Cal.App.2d 381, 384 [142 P.2d 946], that specific intent is not an element of section 499b. The *Bailey* court reasoned: "A specific intent is essential to constitute the misdemeanor of section 499b, and it serves further to distinguish the two sections. To be a misdemeanor, the taking must be for the purpose, that is, with the intent, for the words are synonymous [citations] 'of temporarily using or operating the same.'" (*People* v. *Bailey, supra,* 72 Cal.App.2d at p. Supp. 883.)

In *People* v. *Wesley* (1988) 198 Cal.App.3d 519 [243 Cal.Rptr. 785], the court was called upon to decide whether section 1320.5 (evading the process of the court) is a specific or general intent crime. After analyzing the statutory language, the court concluded a specific intent is required. In reaching this determination, the court emphasized the first sentence of the statute which reads: "Every person who . . . in order to evade the process of the court willfully fails to appear as required, is guilty of a felony." *Wesley* noted that "[t]he ordinary meaning of the phrase 'in order to' is to delineate a purpose. . . . This modifies the language 'willfully fails to appear as required.' Giving this language its ordinary import, we conclude the Legislature intended section 1320.5 to be a specific intent crime. Not only must the individual intend to fail to appear, but also he or she must intend the failure to 'achieve some additional purpose,' i.e., 'to evade the process of the court.'" (*Id*. at p. 522.)

Similar reasoning may be applied in the instant case. Section 499b makes it a misdemeanor for anyone to "take any automobile . . . *for the purpose of temporarily using or operating the same*. . . ." (Italics added.) The ordinary

meaning of the phrase "for the purpose of" is to delineate some additional consequence or purpose. Thus, the individual must not only intend to take the vehicle, but must also intend to temporarily use or operate the same. (Cf. *People* v. *Wesley, supra,* 198 Cal.App.3d at p. 522.) Along this same line, we observe that the Supreme Court has indicated that the taking of a vehicle does not necessarily connote its use or operation. (*People* v. *Barrick* (1982) 33 Cal.3d 115, 134-135 [187 Cal.Rptr. 716, 654 P.2d 1243].)[3] Thus, the word "take," as used in the statute, is not synonymous with temporarily using or operating the vehicle. (Cf. *Ibid.*)

For the foregoing reasons, we conclude the court correctly instructed the jury that a violation of section 499b requires a specific intent.

### IV., V.*

. . . . . . . . . . . . . . . . . . . .

### DISPOSITION

### VI.

The judgment is affirmed.

Agliano, P. J., and Cottle, J., concurred.

---

[3] Defendant cites *People* v. *Barrick, supra,* 33 Cal.3d 115 as authority for the proposition that section 499b is a general intent crime. Our reading of *Barrick* does not support this contention. First, we note that the question before the court was whether or not section 499b is a lesser included offense within Vehicle Code section 10851. In addition, there is nothing in the high court's discussion which can reasonably be interpreted as a holding that section 499b is a general intent crime. (See *id.* at pp. 133-135.)

* See footnote, *ante,* page 745.