[No. A062234. First Dist., Div. One. Sept. 30, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
PAUL ANDREW FRYE, Defendant and Appellant.

## COUNSEL

Kieran D. C. Manjarrez, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Christopher

J. Wei and Joan Killeen, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**DOSSEE, J.**—Defendant was convicted in a jury trial of driving or taking a vehicle (Veh. Code, § 10851, subd. (a)), and was placed on probation for three years. On appeal he challenges the instructions given to the jury differentiating the charged offense from the lesser included offense of joyriding (Pen. Code, § 499b). We find the instructions defective, and we reverse the conviction.

### FACTS

Dr. Manas Ray parked and locked his employer's company-owned car in the parking lot at the Watergate Apartment complex in Emeryville about 4:30 p.m. on February 11, 1993. He last saw the car about 6 p.m. The next morning, at 7 a.m., he found the car missing and called the police.

Later that day, about 11 a.m., Officer Albrandt of the El Cerrito police department noticed a white Oldsmobile drive by with a broken left rear wing window and a piece of glass still in the window. Defendant was driving the car, and there were two passengers. Officer Albrandt followed the car until it pulled into a market parking lot and stopped. The three occupants got out of the car and went into the market. A minute later they walked back out. Defendant, wearing a blue-striped shirt, walked in one direction, while the two passengers, wearing black jackets, walked in the opposite direction. Soon all three began to run. Defendant and one of the passengers, Hugh Robinson, were eventually apprehended. The third occupant was never caught.

Officer Albrandt looked into the car and found the engine still running. There was no key in the ignition. A black jacket was wrapped around the steering column behind the steering wheel. When Officer Albrandt lifted the jacket he saw that the steering column had been smashed; the top portion of the column was missing. The turn signal lever had been snapped off and was hanging next to the steering column.

The police turned the car over to Lynn Kelly, the fleet coordinator for Dr. Ray's employer. Ms. Kelly found the driver's side wing window broken and glass on the rear seat. She was unable to start the car with the ignition key; the key just spun around. She asked Officer Albrandt to remove the black

jacket, as she did not want to touch it. He did so and gave it to defendant at the booking area.

In his defense, defendant claimed that it was the third (unapprehended) occupant of the car, "Lacy," who actually stole the car. Defendant testified that on the morning of February 12, about 10:30 a.m., he and Hugh Robinson were walking down Cutting Boulevard in El Cerrito when they saw Lacy drive by in the white Oldsmobile. Defendant and Robinson got in the car, and Lacy drove to a gas station. Defendant asked Lacy if he could drive the car; he did not know it was stolen. As he was driving, however, he noticed the police officer following him, and Lacy then informed him the car was stolen. Defendant then tried to use the turn signal but noticed the signal lever was hanging down. He then realized the car was indeed stolen.

Defendant testified he had no intent to keep the car and once he learned it was stolen he just wanted to get out of the car.

Hugh Robinson testified and corroborated defendant's version of the events. On rebuttal, however, Officer Albrandt testified that when he questioned Hugh Robinson on February 12, Robinson said that he had been walking down Cutting Boulevard with Lacy and it was defendant who drove by in the Oldsmobile and picked them up; that it was defendant who told the others the car had been stolen, and defendant said it had been stolen in Emeryville.

### Discussion

The Legislature has enacted three statutes dealing with the taking of an automobile without the owner's consent: "grand theft-auto" (Pen. Code, § 487, former subd. 3), "driving or taking a vehicle" (Veh. Code, § 10851) and "joyriding" (Pen. Code, § 499b). Our concern in the present case is with the distinction between Vehicle Code section 10851 and Penal Code section 499b.[1]

Through the years the courts have attempted to differentiate the crimes, and they have done so on the issue of *intent*: "These sections have been

---

[1]Section 10851, subdivision (a), of the Vehicle Code provides: "(a) Any person who drives or takes a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle, or any person who is a party or an accessory to or an accomplice in the driving or unauthorized taking or stealing, is guilty of a public offense and, upon conviction thereof, shall be punished by imprisonment in the state prison for 16 months or two or three years or a fine of not more than ten thousand dollars ($10,000), or both, or by imprisonment in the county jail not to exceed one year or a fine of not more than one thousand dollars ($1,000), or both."

Section 499b of the Penal Code provides: "Any person who shall, without the permission of the owner thereof, take any automobile, bicycle, motorcycle, or other vehicle or motorboat or

consistently distinguished upon a difference in the degree of intent required. . . . [Section 499b of the Penal Code] has been called the 'Joy-ride' statute. It does not require proof of the *intent* to *deprive* the owner of either the title to or *possession* of such vehicle. [Citation.] The misdemeanor designated by section 499b of the Penal Code may be accomplished by merely taking the machine for the temporary *use or pleasure* of the accused person for a 'Joy-ride.' " (*People* v. *Thomas* (1962) 58 Cal.2d 121, 126 [23 Cal.Rptr. 161, 373 P.2d 97] [internal quotation marks omitted, italics in original]; see also *People* v. *Barrick* (1982) 33 Cal.3d 115, 134 [187 Cal.Rptr. 716, 654 P.2d 1243]; *People* v. *Orona* (1946) 72 Cal.App.2d 478, 484 [164 P.2d 769]; *People* v. *Bailey* (1946) 72 Cal.App.2d Supp. 880, 882-883 [165 P.2d 558].)

With respect to the *actus reus*, however, the courts have found no distinction: "Obviously the three statutes are part of a general legislative plan of protection and punishment conceived to prevent the taking or use of an automobile without the owner's consent. Different punishment is fixed to correspond with the intent with which each offense is committed, but the legislation is directed against one evil." (*People* v. *Kehoe* (1949) 33 Cal.2d 711, 714 [204 P.2d 321].) "[T]he physical conduct prohibited by the three enactments is substantially the same, but . . . there purports to be a distinction as to the intent with which the act is done in each instance." (*People* v. *Thomas* (1962) 58 Cal.2d 121, 125 [23 Cal.Rptr. 161, 373 P.2d 97]; accord, *People* v. *Barrick, supra*, 33 Cal.3d at p. 134.)

The Supreme Court long ago recognized the difficulty of differentiating the crimes for the jury: "The distinction between the foregoing offenses is admittedly a subtle one, and would present a rather difficult problem if it were required that a court instruct a jury as to the distinction in a given situation." (*People* v. *Thomas, supra*, 58 Cal.2d at p. 126.)

Today, however, trial courts are often forced to instruct the jury on the distinction. In *Thomas, supra*, the Supreme Court held that a defendant charged with a violation of Vehicle Code section 10851 is not entitled to an instruction on joyriding as a lesser included offense. More recently, however, the Supreme Court concluded otherwise and held that although Penal Code section 499b is not intrinsically a necessarily included offense within Vehicle Code section 10851 under the elements of the offense, the charging allegation may render it so, thereby giving rise to an obligation to instruct on

---

vessel, for the purpose of temporarily using or operating the same, shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine not exceeding four hundred dollars ($400), or by imprisonment not exceeding three months, or by both such fine and imprisonment."

joyriding as well. (*People* v. *Barrick, supra*, 33 Cal.3d 115, 133-135; see also *People* v. *Ivans* (1992) 2 Cal.App.4th 1654, 1663-1665 [4 Cal.Rptr.2d 66]; *People* v. *James* (1984) 157 Cal.App.3d 381, 388 [203 Cal.Rptr. 716].)

The difficulty in drawing the distinction between the offenses led one appellate court justice to comment on the "confusion . . . engendered by the disparate statutes"—confusion which "has been apparent for decades." (*People* v. *James, supra*, 157 Cal.App.3d 381, 388 [conc. opn. of Dalsimer, J.].) More recently, too, one court has suggested that "the Legislature should revisit the auto theft statutes and consider repeal, amendment or enactment of corrective legislation of these confusing statutes. Conceivably, one auto theft statute would suffice to cover the crime in California." (*People* v. *Ivans, supra*, 2 Cal.App.4th at p. 1665, fn. 7.)

In the present case, the trial court instructed the jury in accordance with CALJIC Nos. 14.36 (Veh. Code, § 10851) and 16.305 (Pen. Code, § 499b).[2] The issue on appeal concerns the wording of CALJIC No. 16.305: "Every person who *takes* any automobile without its owner's permission . . . is guilty of violating Penal Code section 499b. . . ." The trial court denied defense counsel's request for a modification of CALJIC No. 16.305 to replace "takes" with "drives or takes." Defense counsel argued that within the context of Penal Code section 499b, "taking the vehicle means driving the vehicle." The trial court reasoned, however, that if the defendant simply drove the vehicle with the state of mind set out in section 499b, he would not be guilty of a crime.

During the jury deliberations, the jury submitted a question to the trial court: "Is the only difference between a guilty of Joyriding 499b vs 10851 the specific intent to temporarily/permanently deprive the owner on the charge of 10851. Is this element missing from 499b?"

---

[2]The jury was instructed as follows: "On the offenses, the defendant is charged with a violation of section 10851 of the Vehicle Code. Every person who drives or takes a vehicle, not his own, without the consent of the owner and with specific intent to deprive the owner either permanently or temporarily of title to or possession of the vehicle, whether with or without the intent to steal the same, is guilty of a violation of Vehicle code section 10851.

"In order to prove this crime, each of the following elements must be proved:

1. A person took or drove a vehicle belonging to another person;

2. The other person had not consented to the taking and driving away of the vehicle; and

3. When such person took or drove the vehicle, he had the specific intent to deprive the owner either permanently or temporarily of title to or possession of the vehicle.

"If you are not satisfied beyond a reasonable doubt that the defendant is guilty of the crime charged, you may, nevertheless, convict him of any lesser crime if you are convinced beyond a reasonable doubt that the defendant is guilty of such a lesser crime. . . ."

"I want to define now the lesser charge. Every person who takes any automobile without its owner's permission and with the specific intent to temporarily take and use or operate such vehicle is guilty of violating Penal Code section 499b, a misdemeanor."

In the ensuing discussion among counsel and the trial court, defense counsel reiterated his position that the "taking" within section 499b could mean simply "driving." The trial court again rejected the argument and instructed the jury as follows: "Okay. We had two questions that needed to be answered this morning, and then you can go back into the room and deliberate. The first is the difference between a violation of the count that's charged, 10851, and a violation of the count that is the lesser offense, 499b. 10851 the charged count, requires a driving or taking. 499b requires a taking. [¶] Second, 10851 requires a specific intent to deprive the owner permanently or temporarily of title or possession of the automobile. 499b does not require a specific intent to deprive the owner of title or possession of a vehicle but does require a purpose or intent of temporarily using or operating it. Okay?"

On appeal defendant contends the instructions given to the jury were vague and misleading, if not downright incorrect, on both elements of Penal Code section 499b— (1) the conduct proscribed and (2) the mental state required. We agree.

(1) *Conduct*

■ CALJIC No. 16.305 informs the jury that Penal Code section 499b is violated if a person "takes" an automobile with the specific intent to use or operate it temporarily. Defendant persuasively points out that the word "takes", although it matches the statutory language, is misleading here as it suggests that the jury must find that the defendant committed the original theft; it does not permit the jury to find the defendant guilty of the lesser misdemeanor offense if the jury finds that the defendant merely drove the car stolen by someone else. In contrast, CALJIC No. 14.36, which defines the greater offense under Vehicle Code section 10851, speaks in the alternative: a person violates that section if he "drives *or* takes" a vehicle. The anomalous result is that the misdemeanor offense seems to require more culpable conduct than the felony offense.

Defendant's point is well taken. There is no question that Vehicle Code section 10851 can be violated simply by the act of *driving* a car without the owner's consent; the defendant need not have committed the original act of taking the car from the owner. (*People v. Malamut* (1971) 16 Cal.App.3d 237, 241-242 [93 Cal.Rptr. 782]; *People v. Cuevas* (1936) 18 Cal.App.2d 151, 153 [63 P.2d 311]; see *People v. Jaramillo* (1976) 16 Cal.3d 752, 759, fn. 6 [129 Cal.Rptr. 306, 548 P.2d 706].) This issue arose in *People v. Cuevas, supra,* because the statute of limitations had expired on the original theft. The court held the defendant could nevertheless be convicted under

Vehicle Code section 10851 based upon his more recent conduct of driving the car. "[T]he subsequent act by defendant in driving the automobile without the consent of its owner was entirely separate and disconnected from the original theft of it." (18 Cal.App.2d at p. 154.)

Although the issue has not been squarely presented with regard to Penal Code section 499b, reasoning and language in several cases support the conclusion that section 499b, too, can be violated by the mere act of driving the car. First, as noted above, the courts have viewed the conduct proscribed by sections 10851 and 499b to be the same. (*People* v. *Thomas, supra*, 58 Cal.2d 121, 125; *People* v. *Kehoe, supra*, 33 Cal.2d 711, 714.) Logically, then, if the conduct proscribed by Penal Code section 499b is the same as that proscribed by Vehicle Code section 10851, section 499b is also violated by the mere act of *driving* the vehicle.

Indeed, the Supreme Court early on explained that "[section 499b] defines as a crime *the act of driving or temporarily using* an automobile without the consent of the owner. Section 503 [now 10851] makes such conduct an offense if done . . . with the intent to deprive him temporarily or permanently of title or possession." (*People* v. *Kehoe, supra*, 33 Cal.2d at pp. 713-714, italics added.)

More recently, the Court of Appeal expressed a similar understanding of the conduct proscribed by the statutes: "The same physical act—the nonconsensual *driving* of another's vehicle—can constitute either a misdemeanor or a felony depending solely on the defendant's state of mind. . . ." (*People* v. *Hicks* (1983) 147 Cal.App.3d 424, 426, fn. 3 [195 Cal.Rptr. 127], italics added.)[3]

Such an interpretation of Penal Code section 499b necessarily construes the word "take" within the statute to mean *take temporary possession* of the car through an act of driving. This construction is consistent with the full text of section 499b. The statute proscribes a taking "for the purpose of temporarily *using* or *operating* the [vehicle]." The courts have impliedly read this language to mean that the taking under section 499b is a taking that amounts to an act of using or operating the vehicle. In other words, the taking under section 499b means driving.

The confusion comes in the fact that both statutes contain the word "take." Vehicle Code section 10851 prohibits driving *or* taking, while Penal Code

---

[3]We note, too, that in at least two cases the courts held that the jury should have been instructed on joyriding where there was evidence that defendant only drove the vehicle and did not commit the original theft. (*People* v. *Ivans, supra*, 2 Cal.App.4th 1654; *People* v. *James, supra*, 157 Cal.App.3d 381.) In both cases, however, there was also circumstantial evidence that defendant was the person who removed the vehicle from the owner's possession. Thus, neither court addressed the question whether driving alone constitutes joyriding.

section 499b mentions only a taking. Under section 10851, the act of taking has been construed to mean the act of appropriating the automobile, distinct from the act of driving the car. In *People* v. *Jaramillo, supra,* 16 Cal.3d at pages 758-759, for example, the court held that under the rule that a thief cannot be convicted of receiving the property he took, the defendant could not be convicted of both receiving stolen property (a vehicle) and taking the same vehicle in violation of Vehicle Code section 10851. (See also *People* v. *Black* (1990) 222 Cal.App.3d 523, 525 [271 Cal.Rptr. 771].) The court stated, however, that a defendant could be convicted of both crimes if the jury found he had only driven the car. (16 Cal.3d at p. 758.)[4] The "taking" within section 10851, then, is limited to the act of removing the vehicle from the owner's possession.

In contrast, as we have explained above, the "taking" within Penal Code section 499b is not confined to the act of removing the automobile from the owner's possession. Even though the word means just that within Vehicle Code section 10851, within section 499b the "taking" is an act of driving whether or not that act is the initial seizure of the vehicle.[5]

In *People* v. *Thomas, supra,* 58 Cal.2d 121, the Supreme Court seemed to draw the distinction between the two types of taking—an act of removing the vehicle from the owner's possession, on the one hand, and an act of driving the vehicle, on the other. In comparing the elements of Vehicle Code section 10851 and Penal Code section 499b, the court noted that "the owner of a vehicle could be deprived of possession [under section 10851] in many ways which would not necessarily require that the offender use or operate the vehicle [under section 499b]." (58 Cal.2d at p. 128.) By this language, the court seemed to acknowledge that the "taking" under section 10851 is an act of removing the car from the owner's possession, while the "taking" under section 499b is an act of taking possession through driving the car.

The Supreme Court's most recent discussion of the two statutes, however, is not helpful in clarifying this point within the context of the case before us. In *People* v. *Barrick, supra,* 33 Cal.3d 115, the Supreme Court first agreed

---

[4]We note that the Supreme Court has granted review in *People* v. *Garcia* (Cal.App.), in which the Court of Appeal disagreed with the notion that a defendant can be convicted of both receiving stolen property and violating Vehicle Code section 10851 only if he drove but did not take the car.

[5]Although some courts have held that the joyriding statute does not apply if the evidence indisputably shows that the defendant was the actual thief (*People* v. *Tellez* (1939) 32 Cal.App.2d 217, 219 [89 P.2d 451] [grand theft-auto]; *People* v. *Ray* (1958) 162 Cal.App.2d 308 [328 P.2d 219] [Vehicle Code former § 503 (now § 10851)]), the courts' analyses were based upon the mental state, not the nature of the conduct. An act of driving the car which serves to remove it from the owner's possession would obviously violate section 499b just as an act of driving the car after the original taking was completed.

with *Thomas* that joyriding is not a necessarily included offense within Vehicle Code section 10851 under the elements of the offense because one could violate section 10851 without violating section 499b: "[O]ne could conceivably 'take' a vehicle in violation of section 10851 without the purpose of using or operating it in violation of section 499b, . . . [F]or example, a vehicle could be towed with the specific intent to deprive the owner of possession without being towed for the purpose of using or operating the vehicle." (33 Cal.3d at pp. 134-135.)

Next, however, the court went on to hold that if the complaint charges a defendant with *driving* and taking an automobile in violation of section 10851, then that allegation necessarily includes a violation of section 499b as well: "As we have seen, a person can take a vehicle without having the purpose of using or operating it. However, one cannot *drive* a vehicle without the purpose of using or operating it, because to drive an automobile is to operate it. [Citation.] Thus, a complaint which charges a defendant [under section 10851] with 'driving and taking' an automobile necessarily charges that he took the automobile 'for the purpose of temporarily using or operating the same' and thus violated section 499b." (33 Cal.3d at p. 135, italics in original; accord, *People* v. *Tiebout* (1983) 141 Cal.App.3d 1011, 1014 [190 Cal.Rptr. 754].)

The foregoing language from *Barrick* could support two divergent views. On the one hand, the court's language seems to support defendant's position that a violation of section 499b occurs upon the act of driving. On the other hand, it is equally arguable that the court meant that the taking under section 499b means the same as the taking under section 10851—the act of removing the vehicle from the owner; and a defendant charged with taking *and* driving under section 10851 is charged with the elements of section 499b as well—the proscribed act of taking plus the proscribed purpose of using the car.

The latter view, however, is inconsistent with the legislative scheme. To construe the "taking" of Penal Code section 499b to mean only the act of removing the vehicle from the owner's possession would mean that one who merely drives the stolen car afterward would be guilty only of the greater offense (Veh. Code, § 10851) while one who actually takes the car could be guilty of either the greater or the lesser. We conclude that such an interpretation would be unreasonable; the word "take" within section 499b must be construed to include as well an act of taking temporary possession through an act of driving.

In the circumstances here, where the evidence permitted the jury to find that defendant drove the car but did not commit the original act of appropriating it from the owner's possession, the instructions given to the jury on

section 499b were misleading. Because CALJIC No. 16.305 uses only the word "take," the jury was likely to interpret the instruction to mean that defendant could not be convicted under section 499b unless the jury found he had committed the original act of removing the car from the owner's possession.[6] This confusion was compounded by the trial court's response to the jury's question, emphasizing that section 499b requires a taking, while section 10851 requires only a driving. We therefore conclude that defendant was entitled to a clarifying instruction, and the trial court erred in denying his request.

### (2) Intent

■ CALJIC No. 16.305, which defines the crime of joyriding, was revised in 1992 to conform to *People v. Diaz* (1989) 212 Cal.App.3d 745, 751 [260 Cal.Rptr. 806], and require a "specific intent to temporarily take and use or operate" the vehicle. In the present case the jury was instructed pursuant to that revision.[7] Defendant argues that *Diaz* was wrongly decided and, hence, the CALJIC instruction based upon *Diaz* was an incorrect statement of law. Again, defendant's point is well taken.

This issue is related to the issue previously discussed. As already noted, several courts seem to have construed the act proscribed by Penal Code section 499b as taking possession of a vehicle through an act of driving. The statutory phrase "for the purpose of temporarily using or operating" was impliedly used by the courts to define the nature of the proscribed conduct: the taking must amount to an act of using or operating the vehicle. (*People v. Thomas, supra,* 58 Cal.2d 121, 128; *People v. Kehoe, supra,* 33 Cal.2d 711, 714; *People v. Hicks, supra,* 147 Cal.App.3d 424, 426, fn. 3.) With that view of the *actus reus,* the crime of joyriding is a general intent crime. That is, the only mental state required is the intent or purpose to do the proscribed act—the act of driving the vehicle. Indeed, in *People v. Neal* (1940) 40 Cal.App.2d 115, 118 [104 P.2d 555], the court stated that "specific intent is not an element in the violation of [section 499b]." (See also *People v.*

---

[6]The common meaning of the word "take" in the context here is "to appropriate," "to remove from the owner's possession." The Attorney General's own description of the evidence uses the word "take" to mean just that: "The vehicle appellant was driving had been *taken* the night before, the rear window had been broken, the steering column had been 'smashed' . . . ."

[7]The jury was at first instructed on the pre-1992 version of CALJIC No. 16.305: "Every person who takes any automobile without the permission of the owner thereof for the purpose of using or temporarily operating that vehicle is guilty of a misdemeanor." After defense counsel called the revision to the trial court's attention, the jury was reinstructed pursuant to the 1992 revision.

*Barrick, supra,* 33 Cal.3d 115, 134; *People* v. *Zervas* (1943) 61 Cal.App.2d 381, 384 [142 P.2d 946].)

In *People* v. *Diaz, supra,* however, the court construed the statutory phrase "for the purpose" to be equivalent to "with the specific intent." The court reasoned as follows: "Section 499b makes it a misdemeanor for anyone to 'take any automobile . . . *for the purpose of temporarily using or operating the same.* . . .' The ordinary meaning of the phrase 'for the purpose of' is to delineate some additional consequence or purpose. Thus, the individual must not only intend to take the vehicle, but must also intend to temporarily use or operate the same. (Cf. *People* v. *Wesley, supra,* 198 Cal.App.3d at p. 522.) Along this same line, we observe that the Supreme Court has indicated that the taking of a vehicle does not necessarily connote its use or operation. (*People* v. *Barrick* (1982) 33 Cal.3d 115, 134-135 [187 Cal.Rptr. 716, 654 P.2d 1243].) Thus, the word 'take,' as used in the statute, is not synonymous with temporarily using or operating the vehicle. (Cf. *Ibid.*)" (212 Cal.App.3d at pp. 750-751 [fn. omitted omitted.]; see also *People* v. *Bailey, supra,* 72 Cal.App.2d Supp. 880, 883.)

The flaw in the *Diaz* court's analysis is the presupposition that the conduct proscribed—the taking—is the act of removing the vehicle from the owner's possession. The court found that that act of taking was not synonymous with, nor inclusive of, the act of driving the vehicle. (212 Cal.App.3d at p. 751.) We disagree and conclude that the "taking" proscribed by Penal Code section 499b is an act of taking possession through driving and that the mental state required by the statute ("for the purpose of temporarily using or operating") is no more than the general intent to perform the act. The statute does not require an intent to achieve a consequence other than the act itself. (See generally *People* v. *Hood* (1969) 1 Cal.3d 444, 456-457 [82 Cal.Rptr. 618, 462 P.2d 370], on the distinction between specific and general intent crimes.)

In summary, then, defendant's appellate arguments on this point are sound; the specific intent instruction was incorrect. Yet, defendant took a contrary position below. Defense counsel argued that specific intent is required and requested the revised CALJIC language. Thus, defendant invited the error and will be deemed to have waived the erroneous instruction on specific intent.

Nevertheless, in light of the misleading instruction on the *conduct* proscribed by Penal Code section 499b, the judgment must be reversed.

The judgment is reversed.

Strankman, P. J., and Stein, J., concurred.

Respondent's petition for review by the Supreme Court was denied January 25, 1995.